NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3139
_____

UNITED STATES OF AMERICA

v.

ABRAHAM CRUZ,
Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-11-cr-00242-001)
District Judge:  Hon. Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)
October 13, 2017

Before:  CHAGARES, JORDAN, and FUENTES, *Circuit Judges.*

(Filed: November 8, 2017)
_____

OPINION[*]
_____

JORDAN, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

A jury convicted Abraham Cruz of two counts of threatening to assault and kill a United States Department of Homeland Security Federal Agent in violation of 18 U.S.C. § 115.  Cruz appeals his conviction, arguing that the intervening decisions in *Elonis v. United States*, 135 S. Ct. 2001 (2015), and *United States v. Elonis*, 841 F.3d 589 (3d Cir. 2016) ("*Elonis II*"), which address the *mens rea* required to establish criminal liability for "threats" under 18 U.S.C. § 875(c), render the jury instructions used in his case erroneous.  Cruz therefore argues that, under *Elonis* and *Elonis II*, we must vacate his conviction and remand for a new trial.  For the reasons that follow, we will affirm the judgment of conviction.

I.      **BACKGROUND**

On August 8, 2011, Cruz went to the Social Security Administration ("SSA") office in Harrisburg, Pennsylvania, to obtain medical benefits for "bipolar disorder and multiple personalities."  (App. at 243.)  After the SSA claims representative advised him that he would not be able to receive those benefits until he received a decision on his medical condition, Cruz became angry.  A protective services officer saw a visibly agitated and upset Cruz leave the building muttering something unintelligible, and then shout:  "You're going to need toe tags."  (App. at 99.)  The officer reported the incident, and Department of Homeland Security Special Agent Edward A. Ryan followed up on that report.

After interviewing the officer, Ryan telephoned Cruz to determine whether he had calmed down, and to "mitigate the threat."  (App. at 124-27.)  Ryan testified that Cruz answered the phone and, after admitting to visiting the SSA that morning, became

2

agitated. According to Ryan, Cruz threatened the SSA employees. Ryan also testified that Cruz said he was going to "take [Ryan's] ticket book, take [his] gun, take [his] … doughnut and beat [his] ass." (App. at 128.)

Ryan reported that conversation to the U.S. Attorney's office, which authorized Ryan to call Cruz a second time and record the conversation. Ryan acknowledged that some of Cruz's comments during the second call, which was played for the jury, were unresponsive. **[App. at 149-51.]** Cruz also made statements including the following: "There gonna be a war about this," "[y]ou should be concerned about yourself … . I'm gonna tell you I'm gonna kill you, I ain't gonna tell you I'm gonna kill you, I'm gonna swing at you, all I got to do is hit you one time[,]" and "why don't you see me in person so we can talk and see whatever, so I can see what I'm talking to, give me a target, you have one.'" (App. at 247-48.) Based on the contents of the second phone call, Ryan obtained a warrant for Cruz's arrest. Ryan, accompanied by eight armed local police and federal officers, then arrested Cruz at his sister's house.

A grand jury in the Middle District of Pennsylvania indicted Cruz on three counts: one count of threatening to assault and kill employees of the United States Social Security Administration, in violation of 18 U.S.C. § 111, and two counts of threatening to assault and kill a United States Department of Homeland Security Federal Agent, in violation of 18 U.S.C. § 115(a)(1)(B).[1] At trial, Cruz's sister testified that Cruz "had

---

[1] Section 115 provides, in pertinent part:

> Whoever … threatens to assault, kidnap, or murder a … Federal law enforcement officer … with intent to impede, intimidate, or interfere with

3

mental health issues" and had been medically treated for bipolar disorder. (App. at 164.) She also testified that, on the day of the incident, Cruz had not taken his medication. She further testified that Cruz uses terms like "toe tags" colloquially, and that her grandchildren nicknamed Cruz "Toe Tag," "Body Bag," and "Toe Toe." (App. at 167.)

After the prosecution rested, Cruz moved for a judgment of acquittal on all three counts. The District Court granted the motion to dismiss Count One, but denied the motion as to Counts Two and Three.

Cruz requested a jury instruction that he had "a mental abnormality[,] disease[,] or defect at the time of the offenses charged[,]" to allow the jury to consider whether he had the requisite mental state to commit the alleged crimes. (App. at 179-80.) At a hearing regarding the proposed charge to the jury, the District Court denied Cruz's request, citing *United States v. Pohlot*, 827 F.2d 889 (3d Cir. 1987), because Cruz had failed to submit expert testimony or "any scientific or psychiatric evidence of mental abnormality[.]" (App. at 185-86.) However, the Court advised counsel that it would be permissible to argue that Cruz "did not intend his threats."[2] (App. at 186.) The Court also noted for the record that Cruz was preserving his objection regarding the denial of a jury instruction on

---

such official, … or with intent to retaliate against such … law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).

18 U.S.C. § 115(a)(1)(B).

[2] Cruz does not argue, and we find no indication in the record to indicate, that he was prohibited from obtaining and proffering expert testimony or psychiatric evidence regarding his mental state.

4

mental abnormality. The record does not reflect an objection to the jury instruction defining "threat," either before or after the jury charge.

In charging the jury, the District Court instructed that, to prove the alleged crimes, the government had to prove that Cruz "acted with a specific state of mind or intent," and the Court defined "threat" and "intent" as follows:

> A threat is a serious statement expressing an intention to inflict bodily injury or murder at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner.
>
> A statement is a threat if it was made under such circumstances that a reasonable person hearing or reading the statement would understand it as a serious expression of intent to inflict bodily injury.
> ….
>
> The third element that the government must prove beyond a reasonable doubt is that the defendant acted with the intent to impede, intimidate, or interfere … or with the intent to retaliate against that official on account of the performance of his or her official duties. …
>
> … The ultimate fact of intent, though subjective, may be established by circumstantial evidence based upon the defendant's outward manifestation, his words, his conduct, his acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom.

(App. at 224, 226, 228.)

On April 3, 2011, the jury convicted Cruz of Counts Two and Three – threatening to assault and kill a United States Department of Homeland Security Federal Agent, in violation of 18 U.S.C. § 115. Following his conviction, Cruz filed a post-trial motion for acquittal, which was denied. The District Court sentenced Cruz to 80 months of incarceration on each count, to be served concurrently.

5

Cruz filed a notice of appeal on September 1, 2015.[3]  He argues that *Elonis* and

*Elonis II* "compel[] this Court to vacate [his] judgment and remand for a new trial

because the District Court's jury instruction defining 'threat' failed to require the jury to

consider [his] subjective intent to threaten."  (Opening Br. at 18.)

## II.    DISCUSSION[4]

Cruz raises two issues on appeal.  First, he challenges the District Court's jury

instruction defining the "threat" element of § 115(a)(1)(B) to include an objective

"reasonable person" standard.  He argues that the "threat" instruction improperly

permitted the jury to convict him based on a merely negligent state of mind, and in light

of *Elonis*, he contends that instruction now constitutes plain error.  Second, Cruz argues

that the "threat" instruction was not harmless error, because if properly instructed, a

reasonable jury could have had a reasonable doubt as to whether Cruz subjectively knew

the threatening nature of his communication.[5]  The government counters that the rule

---

[3] Years elapsed between Cruz's conviction and sentencing, resulting from the government's efforts to determine whether Cruz was competent to participate in the sentencing process.  Ultimately, we affirmed the District Court's order to forcibly medicate Cruz to restore his competence.  *See United States v. Cruz*, 757 F.3d 372, 374 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 1015 (2015).

[4] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

[5] To the extent Cruz advocates a separate standard of review for jury instructions involving *mens rea*, we need not address that argument because, for the reasons explained herein, our authority here is confined to plain error review.  *See, e.g.*, *United States v. Maury*, 695 F.3d 227, 259-60 (3d Cir. 2012) (concluding that, under plain error review, defendant's challenge to negligence *mens rea* instruction also failed because any error was not "clear or obvious" in his case); *see also, e.g.*, *United States v. Marcus*, 560 U.S. 258, 266 (2010) ("[T]he rule that permits courts to recognize a plain error does not

6

announced in *Elonis* is inapplicable to the statute at issue in this case. It further argues

that, even if *Elonis* did apply, any error was harmless, and reversal is unwarranted.

In *Elonis*, the Supreme Court held that "negligence is not sufficient to support a

conviction under Section 875(c)[.]"[6] 135 S. Ct. at 2013. The Court further held that

"[t]here is no dispute that the mental state requirement in Section 875(c) is satisfied if the

defendant transmits a communication for the purpose of issuing a threat, or with

knowledge that the communication will be viewed as a threat."[7] *Id.* at 2012. In doing so,

the Court reasoned that "[f]ederal criminal liability generally does not turn solely on the

results of an act without considering the defendant's mental state[,]" and that, "[u]nder

Section 875(c), 'wrongdoing must be conscious to be criminal.'" *Id.* (quoting *Morissette

v. United States*, 342 U.S. 246, 252 (1952)). The Court also explained that, "[w]hen

interpreting federal criminal statutes that are silent on the required mental state, we read

into the statute only that *mens rea* which is necessary to separate wrongful conduct from

otherwise innocent conduct." *Id.* at 2010 (quotation marks and citation omitted). On

remove serious errors from the ambit of the Federal Rules of Criminal Procedure."
(quotation marks, editorial marks, and citation omitted)); *United States v. Vazquez*, 271
F.3d 93, 103 (3d Cir. 2001) (en banc) ("Trial errors resulting from a failure to submit an
element of an offense to the jury are not structural defects, but instead, are subject to
harmless or plain error analysis. That is, 'an instruction that omits an element of the
offense does not *necessarily* render a criminal trial fundamentally unfair[.]'" (quoting
*Neder v. United States*, 527 U.S. 1, 9 (1999))).

[6] In *Elonis II*, we discussed the Supreme Court's holding and reasoning in *Elonis*.
841 F.3d at 596. We will provide only an abbreviated discussion of those cases here, as
necessary for our analysis.

[7] The Supreme Court expressly declined to address whether recklessness would
suffice for liability under § 875(c). *Elonis*, 135 S. Ct. at 2013.

those grounds, the Supreme Court reversed and remanded the case for further proceedings.

In *Elonis II*, we then applied the Supreme Court's holding and stated our belief that "Section 875(c) contains both a subjective and objective component, and the Government must satisfy both in order to convict a defendant under the statute." 841 F.3d at 596. We said that, "[i]f a defendant transmits a communication for the purpose of issuing a threat or with knowledge that the recipient will view it as a threat, and a jury determines that communication is objectively threatening, then the defendant has violated Section 875(c) whether or not he agrees the communication was objectively threatening." *Id.* at 597 (footnote omitted). We then upheld Elonis's conviction, concluding that a new trial was unnecessary because, based on the evidence at trial, any error in Elonis's jury instructions was harmless. *Id.* at 601. With that discussion in mind, we turn now to Cruz's challenge to the jury instructions.

Because Cruz did not object at trial to the District Court's instruction defining "threat," our review is for plain error.[8] Under Rule 52(b) of the Federal Rules of Criminal Procedure, we have "a limited power to correct errors that were forfeited because they were not timely raised in district court." *Government of Virgin Islands v. Vanterpool*, 767 F.3d 157, 162 (3d Cir. 2014) (citation omitted).

---

[8] "We generally exercise plenary review in [determining] whether the jury instructions stated the proper legal standard … . [H]owever, where, as here, there [was] no objection at trial, we review only for plain error." *Government of the Virgin Islands v. Mills*, 821 F.3d 448, 465 (3d Cir. 2016) (first alteration in original) (quotation marks and citations omitted).

On plain error review, we may, in our discretion, correct the error of which Cruz now complains only if he demonstrates:

> (1) [T]here is an "error"; (2) the error is "clear or obvious, rather than subject to reasonable dispute"; (3) the error "affected [his] substantial rights, which in the ordinary case means" it "affected the outcome of the district court proceedings"; and (4) "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

*Id.* (last alteration in original) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)). The Supreme Court has clarified that, as long as the error complained of was plain at the time of appellate review, the error is "plain" within the meaning of Rule 52(b). *Henderson v. United States*, 568 U.S. 266, 269 (2013). But, "[e]ven where a new rule of law is at issue, Rule 52(b) does not give a court of appeals authority to overlook a failure to object unless an error not only 'affects substantial rights' but also 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id*. at 272 (editorial marks omitted) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). Moreover, the defendant "bears the burden of persuasion with respect to prejudice[,]" so the defendant must show a reasonable probability that the error affected the outcome of the trial. *Olano*, 507 U.S. at 734. "Meeting all four prongs is difficult, as it should be." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quotation marks and citation omitted).

As applied here, if the holdings in *Elonis* and *Elonis II* do indeed extend to the "threat" element of § 115(a)(1)(B), then the District Court would have erred when it charged the jury on that element using solely an objective standard. Even then, however,

we would reverse only if the error were "clear under current law." *Olano*, 507 U.S. at 734; *see also Henderson*, 568 U.S. at 269.

While we have not previously addressed whether *Elonis* extends to threats under § 115(a)(1)(B), it appears that at least one of our sister circuits has. In *United States v. Wynn*, the United States Court of Appeals for the Eighth Circuit concluded that there was no instruction error under *Elonis* when a district court defined the "threat" element of § 115(a)(1)(B)) to include only an objective standard.[9] 827 F.3d 778, 785 (8th Cir. 2016), *reh'g denied* (Aug. 5, 2016), *cert. denied*, 137 S. Ct. 604 (2016).[10]

Regardless of whether the Eighth Circuit was right in its interpretation of *Elonis*, it is enough to say here that whether *Elonis* requires an additional *mens rea* element beyond what the text of § 115(a)(1)(B) itself requires is far from clear under current law. For that reason, we conclude that the jury instruction defining "threat" did not constitute plain error, and we need not reach the merits of Cruz's claim.

---

[9] In *Wynn*, "[t]he district court instructed the jury it must find that [the defendant] 'made a threat to assault or murder an employee of the [Department of Veterans Affairs] ... with intent to retaliate against such employee on account of the performance of official duties.'" 827 F.3d 778, 785 (8th Cir. 2016). The Eighth Circuit concluded, "[t]hat intent separated [defendant's] 'wrongful conduct' from innocent conduct. The [district] court objectively defined 'threat' in another instruction as a 'true threat.' There was no instruction error." *Id.*

[10] Prior to *Elonis*, the Second Circuit stated that § 115(a)(1)(B) contains both objective and subjective components. *See United States v. Turner*, 720 F.3d 411, 420 & n.4 (2d Cir. 2013) (explaining that "18 U.S.C. § 115(a)(1)(B)[] includes both objective and subjective elements"). Moreover, the Ninth Circuit observed that § 115(a)(1)(B) is a specific intent statute, and that "one cannot have the intent required under section 115(a)(1)(B) without also intending to make the threat." *United States v. Stewart*, 420 F.3d 1007, 1017 (9th Cir. 2005).

**III.** CONCLUSION

For the reasons stated above, we affirm Cruz's judgment of conviction.