# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 16-4114

———————————————

United States of America

*Plaintiff - Appellee*

v.

Lawrence Curtis Glover

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

——————————

Submitted: December 11, 2017
Filed: June 21, 2018

——————————

Before WOLLMAN, LOKEN, and MELLOY, Circuit Judges.

——————————

MELLOY, Circuit Judge.

Defendant-Appellant Lawrence Glover appeals a special condition of supervised release imposed as part of a revocation sentence. The special condition prohibits Glover from having contact with his fiancée, Myesha Watkins, who is the mother of his child. We vacate the special condition.

## I.

In September 2011, Glover was sentenced to 71 months' imprisonment and 5 years' supervised release for distributing cocaine base. The district court later reduced his term of imprisonment to 60 months. In November 2015, he began serving his term of supervised release. In October 2016, he was arrested for unlawfully possessing marijuana packaged for delivery and interfering with official acts.

Based in part on these acts, the district court found him in violation of the terms of his supervised release. The district court imposed a revocation sentence of 8 months' imprisonment and 4 years' supervised release, with the new special condition that he not have contact with Watkins. We recount the details of events leading to his 2016 arrest as relevant to the challenged condition of supervised release.

A Cedar Rapids police officer noticed a van without license plates and began pursuit. A car between the officer and the van appeared to be trailing the van, but turned onto a different street, and the officer continued following the van. After the van pulled into a driveway, the officer pulled in directly behind the van, blocking the driveway.

Upon approaching the van on foot, the officer and her partner smelled raw marijuana. Another officer arrived and also smelled raw marijuana. Eventually, officers asked Glover to exit his van, and they attempted to place him in the back of a squad car. When officers opened the door to the squad car, however, Glover escaped on foot.

Other officers captured Glover several blocks away. Upon searching the van, officers discovered a mason jar holding a small quantity of marijuana packaged in seven bags worth an estimated total of $140. In addition, a later search of his home revealed $3,800 in bundled cash, identification materials belonging to another person,

evidence showing that he had repeatedly traveled outside the district in violation of his supervised release, a baggie fragment containing three Lorazepam tablets not prescribed to him, and an abundance of possibly stolen clothes still bearing store tags. Glover shared the home with Watkins.

At Glover's revocation hearing, an officer testified that the car that had initially been between the squad car and the van was a "trailing car." According to the officer, a trailing car will often follow a lead car carrying drugs, guns, or cash so that the trailing car can prevent police from apprehending the lead car. Typically, the trailing car will physically block the police, perform a blatant traffic violation, or employ other means to draw police away.

The same officer testified that, during a recorded phone call after Glover's arrest, Glover and Watkins discussed the driver of the trailing vehicle. Neither the recording of the phone call nor a transcript of the recording were introduced at the hearing. The officer testified about the call as follows:

> Q. And can you tell me what you heard during that conversation with the defendant regarding trailing vehicles?
> A. During — that conversation kind of reaffirms what I know to be true with the use of trailing vehicles. During that conversation, she [Watkins] was upset that that trailing car didn't do its job, which would be to run interference for the police so the lead vehicle would not have contact with the police.
> Q. Did the defendant talk about Chuck [the trailing-car driver] going one way?
> A. Yes.
> Q. What did he say about that, do you recall?
> A. I believe he — there was some conflict between the girlfriend and this Chuck person. Chuck's recollection was that the first vehicle had sped up, making it difficult for him to do his job, and that's why he pulled off.

Q. So did the defendant also talk about seeing Chuck in his rearview mirror pulling off?

A. Yes.

Q. So they were both upset that the trailing vehicle disappeared before the defendant was stopped by the police that morning?

A. Yes.

On cross-examination, defense counsel asked the officer about his recollection of the phone call:

Q. You testified about the phone conversation that you listened to. And, I guess, as I understood it, and correct me if I'm wrong, you seemed to be kind of generalizing what the conversation was rather than giving a more verbatim version of the conversation. Is that a fair characterization?

A. Yes.

Q. Do you remember — I don't expect you to be able to regurgitate exactly what was said, but can you give a more, I guess, accurate version of exactly what that conversation was?

A. I hesitate to do that. I've only heard it a couple of times.

As the sentencing hearing progressed, there was little additional reference to Watkins. Glover admitted to possessing most of the materials found in the van and at his home. He stated, however, that the tagged clothing belonged to Watkins.

Then, when making arguments as to possible sentences, defense counsel advocated a lenient sentence based upon the fact that Glover had a newborn child. At that time, the government had not requested a special no-contact condition as part of supervised release. In fact, no party had raised the issue of a no-contact condition between Glover and Watkins. In response to counsel's reference to a newborn and family, the following exchange took place:

THE COURT:      What is this girlfriend's name, Myesha, what?
PROB. OFFICE:  Watkins.
THE COURT:      All right. He's not going to be able to have contact with her because she was engaged in criminal activity with him. I don't know if that's the person that's going to have the baby, but we have the phone call where she is obviously involved with this marijuana and the trailing car and the like, so we'll have to work through that with him in terms of visitation with the child when the child is born.

Finally, later in the hearing, when addressing Glover's credibility and announcing the sentence, the court again referenced Watkins, stating:

> As far as the reference to stolen articles in the house, I don't know if they were stolen, the clothing. He claims those belong to his girlfriend. I'm sure that those can be traced back. If he says they're his girlfriend's and they're stolen, they're shoplifted, then that will be another issue for the Cedar Rapids Police to look at.

Glover appeals only the no-contact special provision of his supervised release.

## II.

District courts possess "wide discretion," United States v. Wroblewski, 715 F.3d 701, 702 (8th Cir. 2013) (per curiam), in fashioning conditions of supervised release, but such conditions must be "reasonably related" to several of the § 3553(a) sentencing factors, 18 U.S.C. § 3583(d)(1). Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct . . . to protect the public from further crimes of the defendant . . . and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Id. § 3553(a)(1),

(a)(2)(B)–(D). Further, the conditions must "involve[] no greater deprivation of liberty than is reasonably necessary" for the purposes of 18 U.S.C. § 3553(a)(2)(B)–(D). Id. § 3583(d)(2). Importantly, "[w]hen crafting a special condition of supervised release, the district court must make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record so as to ensure that the special condition satisfies the statutory requirements." United States v. Wiedower, 634 F.3d 490, 493 (8th Cir. 2011) (citation omitted). In other words, "a district court may not impose conditions on the basis of pure speculation or assumptions." United States v. Schaefer, 675 F.3d 1122, 1124 (8th Cir. 2012) (citation omitted).

This demand for an individualized review is the natural extension of the general requirement that a condition involve "no greater deprivation of liberty than is reasonably necessary." 18 U.S.C. § 3583(d)(2). Without a careful analysis of the personal relationship and its connection to a defendant's conduct, the need for deterrence, and possible correctional treatment or rehabilitation, it cannot be known if a no-contact provision is appropriate or greater than necessary.

Here, we conclude the district court's explanation was not sufficient to permit meaningful appellate review. It appears Watkins had knowledge of at least some of Glover's criminal activity, but the nature of her involvement is unclear. The items in the home bore little apparent connection to Watkins, and the district court made no findings regarding her connection to the money or clothes. Finally, when imposing the special condition, the district court expressed uncertainty as to whether Watkins was the mother of Glover's child. As such, we vacate the challenged special condition.

## III.

"When the government has had a full and fair opportunity to present its evidence, we follow the traditional path of limiting [it] to one bite at the apple." United States v. Hobbs, 845 F.3d 365, 369 (8th Cir. 2016) (alteration in original) (citation omitted). Here, however, the government did not have a full and fair opportunity to present its evidence as to Glover's relationship with Watkins or her involvement in his criminal activity. The government had not requested the condition, and Glover made no contemporaneous objection. Accordingly, although we vacate the special condition, we do so without prejudice to the government's ability to move for additional proceedings.

_____