# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-2087

_____

United States of America

*Plaintiff - Appellee*

v.

Jason Michael Strubberg

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Central Division

_____

Submitted: November 15, 2018
Filed: July 12, 2019

_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

A jury convicted Jason Michael Strubberg of one count of attempting to entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). On appeal, Strubberg argues there was insufficient evidence to support his conviction, challenges

the district court's[1] instructions to the jury, and contends certain supervised release special conditions were improper. We affirm.

## I. Background

In January 2016, law enforcement officials arrested Strubberg in a motel parking lot when he tried to meet up with a woman whom he believed to be "Kathy," and her fourteen-year old daughter, "Abby." Strubberg had, through text messages with Kathy, planned a rendezvous at the motel with the mother and daughter, during which he would "train" Abby by engaging in sexual acts with her as Kathy watched. Unbeknownst to Strubberg, neither Kathy nor Abby were real people; instead, they were fictional characters created as part of a sting operation.

After the arrest, Detective Andrew Evans led Strubberg to believe police had been tipped off by Kathy, who had gotten cold feet and called the police. Strubberg admitted to Detective Evans he had sent the texts to Kathy indicating he intended to engage in sexual conduct with both Abby and Kathy.

Strubberg was then charged with attempting to entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). The case went to trial. The government called five witnesses, with most of the testimony coming from Detective Evans. Strubberg called three witnesses to testify, including himself.

During Strubberg's testimony, he admitted he initially intended to have sex with Abby. Strubberg claimed, however, this was only because he thought it would be legal if the mother signed a contract giving him permission. He explained to the

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

jury that he later researched the law and determined it would be illegal to have sex with a fourteen-year-old even with such parental permission.

With this information in mind, Strubberg claimed to the jury that he decided against having sex with Abby. Strubberg explained he nonetheless proceeded to the meeting location. He testified he did this because he wanted to meet with Kathy, in part, so he could tell her in person that he could not have sex with Abby unless she convinced him it was legal. He also testified that he hoped Kathy would agree to have sex with him.

The jury found Strubberg guilty. The district court sentenced him to 120 months of imprisonment and five years of supervised release with special conditions. Strubberg filed a timely notice of appeal, challenging both his conviction and sentence.

## II. Analysis
### A. Sufficiency of the Evidence

We first consider Strubberg's attack on his conviction based on his belief there was insufficient evidence to support the jury's guilty finding. This court reviews de novo an appeal based on insufficiency of the evidence. *United States v. Young*, 613 F.3d 735, 742 (8th Cir. 2010). "The jury's verdict will be upheld if there is any interpretation of the evidence that could lead a reasonable jury to find the defendant guilty beyond a reasonable doubt." *Id.*

A conviction for enticement of a minor to engage in sexual activities requires the government to prove beyond a reasonable doubt the defendant:

> (1) used a facility of interstate commerce, such as the internet or the telephone system; (2) knowingly used the facility of interstate commerce

with the intent to persuade or entice a person to engage in illegal sexual activity; and (3) believed that the person he sought to persuade or entice was under the age of eighteen.

*Id.* (quoting *United States v. Pierson*, 544 F.3d 933, 939 (8th Cir. 2008) (cleaned up)).

To prove attempt, the government must establish "(1) intent to commit the predicate offense; and (2) conduct that is a substantial step toward its commission." *United States v. Spurlock*, 495 F.3d 1011, 1014 (8th Cir. 2007). Conversations to arrange to have sex with a minor may constitute attempt when those conversations go "beyond mere preparation," are "necessary to the consummation of the crime," and "strongly corroborate . . . criminal intent to entice [a minor]." *Id.*

On appeal, Strubberg argues there is not sufficient evidence he intended to engage in illegal activity because, once he learned the activity was illegal, he abandoned his intent to engage in sexual contact with the girl. Strubberg claimed to the jury he went to the meeting spot only because he wanted to tell Kathy he thought it was probably illegal to have sex with Abby, and also in the hope he could still have sex with Kathy. Strubberg also argues there was not sufficient evidence to show that he took a substantial step toward engaging in the illegal activity because he refused to stop his car in the parking lot at the motel and instead sought to drive away.

We find no merit in Strubberg's arguments. There were numerous instances where Strubberg explicitly announced his intent to engage in sexual activity with someone he was told was a minor. This happened repeatedly during his text message conversations with Kathy. Strubberg also conducted an internet search the morning he was to meet Abby that used crass search terms indicating he had a desire to learn about having sex with a minor. Furthermore, he bought condoms at the convenience

store immediately before proceeding to the motel.[2]  He also wore a red shirt to make Abby and Kathy "feel comfortable," after Kathy told him red was Abby's favorite color.  While Strubberg certainly has offered excuses for much of this behavior and a story that he had abandoned wrongful intent when he went to the motel, the jury was not required to believe him.

As to the substantial step element,"[a] substantial step generally exists when a defendant takes actions 'necessary to the consummation of the crime' that were of 'such a nature that a reasonable observer, viewing the actions in context, could conclude that the actions were undertaken in accordance with a design to' commit the actual offense."  *Young*, 613 F.3d at 743 (quoting *United States v. Mims*, 812 F.3d 1068, 1077 (8th Cir. 1987) (cleaned up)).

We have repeatedly held the substantial step element was satisfied by acts similar to those taken by Strubberg.  *See id.* (holding the defendant took a substantial step by attempting to check into a hotel even though he cancelled the room after his credit card declined); *United States v. Myers*, 575 F.3d 801, 809 (8th Cir. 2009) (holding the defendant took a substantial step toward committing a crime when the evidence showed he drove two hours to meet the minor and police found condoms and a digital camera in his car); *United States v. Patten*, 397 F.3d 1100, 1104 (8th Cir. 2005) ("There is clear authority for the government's position that [the defendant's] act of driving to the arranged meeting place . . . was relevant evidence of a substantial step.").  Specifically, Strubberg planned a sexual encounter with a minor and then took a substantial step by traveling to the meeting place, buying condoms, and then driving to the motel.  The evidence is sufficient to uphold Strubberg's conviction.

---

[2]Strubberg and Kathy had originally planned to meet at the convenience store. Strubberg received a text message telling him Kathy and Abby would meet him at a nearby motel because there were too many cars at the convenience store.

## B. Jury Instructions

Strubberg challenges the district court's jury instructions in two ways. First, he argues he was entitled to an entrapment defense instruction. He also argues the district court abused its discretion by instructing the jury it could not allow the fact the government used deceptive means during the sting operation to affect its verdict. Neither argument warrants reversal.

### 1. Entrapment Instruction

"The refusal of a proffered entrapment instruction is a denial of a legal defense." *United States v. Cooke*, 675 F.3d 1153, 1155–56 (8th Cir. 2012). Consequently, this court reviews a denial of an entrapment instruction de novo. *Id.* at 1156.

"A defendant is entitled to an instruction on the affirmative entrapment defense if sufficient evidence exists from which a reasonable jury could find that [the] government entrapped him." *United States v. Wynn*, 827 F.3d 778, 786 (8th Cir. 2016). "A valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in criminal conduct." *Id.* (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988) (cleaned up)).

"To warrant an instruction, a defendant alleging entrapment must 'show that the government agents implanted the criminal design in his mind and induced him to commit the offense.'" *Id.* (quoting *United States v. Kendrick*, 423 F.3d 803, 807 (8th Cir. 2005)). "Evidence that Government agents merely afforded an opportunity or facilities for the commission of the crime would be insufficient to warrant an entrapment instruction." *Id.* (quoting *Mathews*, 485 U.S. at 66 (cleaned up)).

"Entrapment occurs only when the criminal conduct was the product of the *creative* activity of law-enforcement officials." *Id.* (quoting *Sherman v. United States*, 356 U.S. 369, 372 (1958)). Factors relevant to determining whether a defendant was induced to entice a minor in sexual activity include the following: (1) whether the government officials initiated the contact; (2) who introduced the topics of meeting and sex; and (3) the degree to which the government officials influenced the behavior of the defendant by portraying minors as sexually precocious. *Young*, 613 F.3d at 747.

The district court concluded the instruction was not warranted, in part, because the government did not induce the crime. We agree.

Strubberg initiated contact with law enforcement officials, who were posing as Kathy. Strubberg asked Kathy what she wanted him to teach her daughter. After Kathy made a sexually suggestive statement — that she wanted him to teach her daughter "discipline, respect, and birds and bees stuff :)" — Strubberg almost immediately brought up having sex with the girl despite being told she was only fourteen years old. Over the next several days, Strubberg repeatedly initiated explicit discussions of the sexual acts he would engage in with the child. And despite being given numerous opportunities to back out of the arrangement, Strubberg persisted in encouraging Kathy to proceed and continued to arrange the details of the rendezvous. Considering these facts, Strubberg did not meet his burden of establishing there was sufficient evidence the government induced him. *See Young*, 613 F.3d at 747 (holding the defendant did not establish the government induced him to commit the crime of enticing a minor even though the government initiated some of the sexual conversations and arguably portrayed the purported minor as a "sexually precocious teenager").

Strubberg relies on cases from outside this circuit to contend he was entitled to the jury instruction. *See United States v. Gamache*, 156 F.3d 1, 10–11 (1st Cir.

1998); *United States v. McGill*, 754 F.3d 452, 454 (7th Cir. 2014). We do not believe the facts in *Gamache* or *McGill* are analogous to the facts of this case. In *Gamache*, the government first initiated the idea of the defendant having sex with the underage children and the defendant initially only expressed a desire to have a sexual relationship with the children's mother. 156 F.3d at 10–11. Here, Strubberg was the first to directly reference sex with a minor and only later tried to convince the mother to have sex with him. And in *McGill* the court stressed the fact the defendant's friend (who was working undercover in cooperation with the government) kept pushing the crime on the defendant, despite the defendant's repeated attempts to change the topic and cancel meetings with his friend. 754 F.3d at 455, 459. Our review of the record convinces us Strubberg did not receive the pressure or manipulation placed on the defendants in *Gamache* or *McGill*. These cases, therefore, do not convince us Strubberg was entitled to his requested entrapment instruction.

## 2. Deceptive Investigation Instruction

Over Strubberg's objection, the district court included a jury instruction describing deceptive investigative techniques employed by the government officials and directing the jurors not to allow their opinion of such practices to influence their deliberations. The instruction stated:

> During this trial you heard the testimony from undercover agents who were involved in the government's investigation in this case. Undercover agents may properly make use of false names, false appearances, and may properly assume the roles of members in criminal organizations. The government may utilize a broad range of schemes and ploys to ferret out criminal activity. Law enforcement officers are not precluded from engaging in stealth and deception, such as the use of undercover agents, in order to apprehend persons engaged in criminal activities.

Whether or not you approve of the use of such investigative techniques to detect unlawful activities is not to enter into your deliberations in any way. If you are satisfied beyond a reasonable doubt that the defendant committed the offense as charged in the indictment, the fact that the government made use of investigative techniques that deceive is not relevant to your determination.

On appeal, Strubberg argues this instruction interfered with the jury's consideration of the evidence. Strubberg contends the jury could have interpreted this instruction as forbidding it from considering for purposes of credibility the fact Detective Evans deceived Strubberg in order to obtain his confession. Strubberg contends this shifted or limited the government's burden of proof and requires reversal here because there is no way to know whether the jurors ignored concerns over Evans's credibility due to the instruction.

This court "review[s] a district court's formulation of jury instructions for an abuse of discretion and its interpretation of law *de novo*." *United States v. Farah*, 899 F.3d 608, 614 (8th Cir. 2018). An error in the instructions "does not warrant reversal of a conviction if it is harmless." *Id.* We may disregard such an error where it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty without the error. *Id.*

Strubberg is correct that we have never endorsed such a jury instruction. Nor have the parties cited to any other circuit court permitting this exact instruction. We do note the Seventh Circuit has analyzed a similar jury instruction by a district court and refused to find its use an abuse of discretion. *See United States. v. McKnight*, 665 F.3d 786, 789–90 (7th Cir. 2011). The instruction at issue in *McKnight* stated:

Sometimes the government uses undercover agents and undercover informants who may conceal their true identities in order to investigate suspected violations of law. In the effort to detect violations of the law, it is sometimes necessary for the government to use ruses, subterfuges

-9-

and employ investigative techniques that deceive.  It is not improper or illegal for the government to use these techniques, which are a permissible and recognized means of criminal investigation.  Whether or not you approve of such techniques[] should not enter into your deliberations in any way.

*Id.* (alteration in the original).

The Seventh Circuit refused to reverse the guilty verdict based on the instruction.  *Id.* at 795.  The court explained the instruction could be a useful tool to remind the jury of its task at hand and not to serve as a "roving commission to express disapproval of law enforcement techniques that are acceptable under established legal principles."  *Id.* at 794.  And the court discounted the concern that the jury would take this instruction to mean it must take the informant's testimony at face value in light of other instructions suggesting they could question the informant's credibility.  *Id.* at 794–95.  The court did, however, express some concerns about the use of the instruction, recognizing such an instruction may clutter the instructions as a whole, deflect the jury's attention from its most important task, and give a signal of indirect approval by the judge of the government's management of the investigation.  *Id.* at 794.

We  share the Seventh Circuit's concern that the instruction could signal indirect judicial approval of the government's management of the investigation.  However, the evidence supporting Strubberg's conviction is so overwhelming that any possible error would be harmless.  Although we do not endorse or encourage giving this instruction, we will not vacate Strubberg's conviction based on its inclusion.

## C. Special Conditions

Finally, we consider Strubberg's challenges to seven special conditions of supervised release the district court imposed on him as part of his sentence. Strubberg admits he did not object to any of these conditions at his sentencing hearing and thus plain error review applies.[3] *See United States v. Bordman*, 895 F.3d 1048, 1054 (8th Cir. 2018).

"To prevail under plain-error review, [Strubberg] 'must show (1) the district court committed an error, (2) the error is clear or obvious, and (3) the error affected his substantial rights.'" *Id.* (quoting *United States v. White Bull*, 646 F.3d 1082, 1091 (8th Cir. 2011)). Even where those elements are satisfied, the court "will exercise [its] discretion to reverse 'only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *White Bull*, 646 F.3d at 1091 (cleaned up)).

Part of Strubberg's argument on appeal is that the district court imposed these special conditions without providing an adequate explanation as to how the conditions satisfied the requirements of 18 U.S.C. § 3583(d). It is true that when crafting a special condition, the district court is generally required to "make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record so as to ensure that the special condition satisfies the statutory requirements." *United States v. Glover*, 893 F.3d 536, 539 (8th Cir. 2018)

---

[3]The Presentence Investigation Report included the challenged special conditions and noted the statute required a term of supervised release of at least five years and United States Sentencing Guidelines § 5D1.2(b)(2) required a term of supervised release of between five years and life. In his briefing and during the sentencing hearing, Strubberg only challenged the length of his supervised release, arguing it should be for no more than five years. The district court agreed, concluding any longer supervision was unnecessary.

(quoting *United States v. Wiedower*, 634 F.3d 490, 493 (8th Cir. 2011)). However, even if the district court does not make individualized findings, "reversal is not required . . . if the basis for the imposed condition can be discerned from the record." *United States v. Thompson*, 653 F.3d 688, 694 (8th Cir. 2011). On the record before us, and as will be evident from our discussion of Strubberg's substantive complaints, we cannot say the district court's failure-to-explain was "an obvious error that caused prejudice and a miscarriage of justice." *United States v. Thompson*, 888 F.3d 347, 351 (8th Cir. 2018). For this reason, we decline to vacate the special conditions for a lack of adequate explanation.

As for Strubberg's complaints about the substance of the special conditions, we begin by noting that district courts have wide discretion when fashioning conditions of supervised release. *See id.* at 351. The conditions must, however, be "reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a), involve[] no greater deprivation of liberty than is reasonably necessary, and [be] consistent with any pertinent policy statements issued by the Sentencing Commission." *Id.* (citing 18 U.S.C. § 3583(d)). Because Strubberg did not object to any of the special conditions, in order to prevail on plain error review he must "establish that the condition is obviously impermissible" to reverse — it is not enough that the permissibility of the condition is "reasonably debatable." *Id.* at 355. For the reasons discussed below, Strubberg cannot meet his high burden.

### 1. Computer-Related Conditions

We first consider Strubberg's challenges to three conditions related to his use of computers. Conditions "c" and "k," which are identical, state: "The defendant shall not possess or use any computer or electronic device with access to any 'on-line computer service,' without the prior approval of the Probation Office. This includes any public or private computer network." Condition "m" requires Strubberg to consent to the Probation Office conducting periodic, unannounced examination of his

cell phone contents and hardware.  Condition "n" requires that Strubberg consent to having hardware or software installed on his computer (at Strubberg's cost) so as to monitor its use.

We have upheld conditions that limit or restrict the use of computers and the internet where they are related to the circumstances of the defendant's offense.  *See United States v. Perrin*, No. 18-1503, 2019 WL 2517787, at *5 (8th Cir. June 19, 2019) (concluding a computer-related condition did not involve a greater deprivation of liberty than is reasonably necessary because it was not a complete ban on internet access and there was ample evidence the defendant used his devices for illegal activities); *United States v. Bender*, 566 F.3d 748, 751 (8th Cir. 2009) (citing cases where we have "affirmed computer and internet restrictions where the defendant sold, transferred, produced, or attempted to arrange sexual relations with minors").  We have reasoned that when such a connection between the crime and the condition exists, the condition "is reasonably calculated to deter [the defendant] from repeating his illegal activity, protect the public from similar conduct, and serve his correctional needs." *Id.*

The district court did not err in imposing these conditions.  The trial record shows Strubberg perused websites in an effort to arrange casual sexual encounters, which was the genesis of his attempt to have sex with a minor here.  He exchanged emails and photographs with Kathy, including purported photographs of Abby.  And he used search terms indicating he was looking up information about having sex with a minor immediately before leaving to meet with Abby.  Also, the conditions do not amount to a total ban on computers or internet use as they allow Strubberg to possess and use computers authorized by the Probation Office and subject to reasonable conditions.

## 2. Conditions Related to Contact and Residence

We next consider Strubberg's challenges to three special conditions related to his contact with minors and his residence. Condition "e" provides that Strubberg not "associate or have any contact with persons under the age of 18, except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense and who has been approved by the Probation Office." Condition "h" provides that Strubberg's "place of residence may not be within 1,000 feet of schools, parks, playgrounds, public pools, or other locations frequented by children." Condition "i" states Strubberg is "barred from places where minors (under the age of 18) congregate; such as residences, parks, pools, daycare centers, playgrounds and school[s], unless prior written consent is granted by the Probation Office."

Strubberg claims these conditions are "wildly overbroad for a defendant who was the victim of a sting, and has never been shown to have had contact with any child for sexual purposes." He also complains they lack clarity to the point he will have difficulty complying with them. Although we are troubled by the breadth of the conditions, we conclude it was not plain error for the district court to impose them.

First, our precedent supports the imposition of condition "i," which forbids Strubberg from going places where minors congregate without prior written consent from the Probation Office. *See United States v. Crume*, 422 F.3d 728, 733–34 (8th Cir. 2005) (concluding a similar restriction was sensible and not overly broad after applying a reasonableness requirement that it would apply only at such places where children under the age of 18 actually congregate); *United States v. Ristine*, 335 F.3d 692, 696–97 (8th Cir. 2003) (upholding a similar condition under plain error review). Therefore, we conclude it was not plain error to impose the condition on Strubberg.

As for condition "h," which forbids his residence from being within 1,000 feet of "schools, parks, playgrounds, public pools, or other locations frequented by children," we have affirmed similar conditions in the past. *See Thompson*, 888 F.3d at 353–54 (holding the district court did not commit plain error by including a condition that did not permit him to reside within 500 feet of places frequented by children under the age of 18, without prior written approval from the probation office). We recognize Strubberg's condition differs from *Thompson* in that it does not permit Strubberg to ask the Probation Office to approve an exception. And this inability to seek approval is troublesome considering the vagueness of the inclusion of "other locations frequented by children."

We are also concerned with condition "e," which provides that Strubberg "will not associate or have any contact with persons under the age of 18, except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense and who has been approved by the Probation Office." It is true we have affirmed somewhat similar conditions before. *See id.* at 353 (affirming a condition on plain error review forbidding contact with minors without prior written permission of the probation office); *Bender*, 566 F.3d at 753–54 (explaining this court has affirmed similar special conditions where the defendant can seek permission from the probation office to contact minors in specific situations). But the condition here gives us pause because it does not permit Strubberg to seek approval for appropriate un-chaperoned contact with a minor. And the government has failed to point to any case where we have affirmed such a condition without the ability to ask for permission.

Despite our concerns, we decline to vacate these conditions on plain error review because we cannot say they were obviously impermissible. We trust the probation office and, if necessary, the district court will interpret these conditions in a manner where they will not unreasonably interfere with Strubberg's liberty. And should the special conditions prove unworkable because of their vagueness or

breadth, Strubberg "may apply to the district court for an appropriate modification," pursuant to 18 U.S.C. § 3583(e). *United States v. Forde*, 664 F.3d 1219, 1225 (8th Cir. 2012) (quoting *United States v. Henkel*, 358 F.3d 1013, 1015 (8th Cir. 2004)).

### III.  Conclusion

For the above reasons, we affirm the district court's judgment.

_____