# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-2559
_____

United States of America

*Plaintiff - Appellee*

v.

James N. Joiner

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: May 12, 2022
Filed: July 8, 2022
_____

Before SMITH, Chief Judge, COLLOTON and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

A jury found James N. Joiner guilty of attempted persuasion, inducement, or enticement of a minor for sexual activity, in violation of 18 U.S.C. § 2422(b), and the district court[1] sentenced Joiner to 150 months imprisonment and 5 years

---

[1]The Honorable Brian C. Buescher, United States District Judge for the District of Nebraska.

supervised release. Joiner appeals his conviction and sentence on multiple grounds. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In March 2020, Douglas County Sheriff's Deputy and FBI Child Exploitation and Human Trafficking Task Force Officer Chad Miller participated in an online prostitution investigation. Deputy Miller placed an advertisement for a female escort on www.skipthegames.com, a website commonly used for prostitution. The advertisement described the fictional escort as 19 years old, the minimum age that can be listed on the website. The advertisement included elements suggesting that the escort was a minor, including photographs of a young female with a "bear ears" filter,[2] a photograph of the same female in front of a locker, and requests for an iTunes gift card and a phone. The advertisement featured a list of available sexual services, as well as the fictional escort's rates ($80 for a "quick visit," $120 for a half-hour, and $200 for an hour).

Unaware that no such escort in fact existed, on March 29, 2020, Joiner sent a text message to the phone number listed on the advertisement. Deputy Miller, acting undercover as the escort, responded to Joiner's text message the next day. Over the course of seven hours, Joiner and the undercover officer engaged in a text-message conversation, with the undercover officer pretending to be the young female described in the advertisement. Joiner told the undercover officer that he wanted to meet. The undercover officer asked how old Joiner was and if he had cash. Joiner responded that he was 47 years old and had cash before asking for the undercover

---

[2]Filters are static artistic overlays that may be added to a photograph. Social media platforms such as Snapchat offer a variety of filters for users to apply to photographs.

officer's age. The undercover officer said that "she"[3] was 15 years old, and Joiner's next message was, "Really send me a picture." The undercover officer sent one photo of a clothed female with a "cat ears" filter. In subsequent messages, Joiner texted that the undercover officer was too young to "hang out" but offered "her" money to houseclean. The undercover officer repeatedly declined the housecleaning offer and suggested that Joiner find an older female. At one point, Joiner asked if the undercover officer was working with law enforcement, and the undercover officer answered no. Joiner persisted in asking when the undercover officer could meet and what "she" wanted for "her" time, with the undercover officer responding by listing the rates included in the advertisement. The undercover officer texted, "The house cleaning thing makes me feel uneasy, how much time and what do u want," followed by "I dont want to get fucked over." Joiner replied, "I don't either we are all good and on the same page" followed by "Hhr" (an abbreviation for half-hour). Their conversation continued, with both expressing unease. Joiner later asked, "Can you tell me what you offer in a hhr visit." The undercover officer answered, "Look at my ad, and tell me what u want, that's why I make the ad." The advertisement listed six sexual activities. Joiner replied, "I just did and that's what I want." Joiner asked where they could meet and agreed to the undercover officer's request that condoms be used. They planned to meet at a gas station in Omaha. Once Joiner arrived at the gas station, he texted the undercover officer to hurry because there were people nearby. At the gas station, law enforcement stopped Joiner and found $60 in cash, a condom, and a cell phone on his person. Law enforcement obtained a search warrant for Joiner's phone and located his text-message conversation with the undercover officer.

A grand jury returned a one-count superseding indictment against Joiner, charging him with "us[ing] a facility and means of interstate commerce to knowingly attempt to persuade, induce, and entice an individual who had not attained the age of 18 years to engage in prostitution and any sexual activity for which the defendant

_____

[3]Although Deputy Miller is a male, because he was acting as the underage female escort, we refer to him using female pronouns when describing the text-message conversation.

-3-

could be charged with a criminal offense," in violation of § 2422(b). The case proceeded to trial, and at the start of trial, the district court instructed the jury that Joiner had been "charged with attempted persuasion or coercion of a minor." During Joiner's opening argument, defense counsel stated that the government had to prove Joiner's intent to coerce the undercover officer into engaging in unlawful sexual activity. Both the undercover officer and Joiner testified at trial, and their entire text-message conversation was admitted into evidence, as well as the online advertisement. At the end of the government's case, Joiner moved to dismiss the charge against him based on insufficient evidence produced by the government to convict him, specifically as to his intent, which the district court denied. Then, the government informed the district court that the term "coerce" did not appear in the superseding indictment and therefore should be removed from the jury instructions to avoid a constructive amendment. The district court reserved its ruling until the end of Joiner's case, when, over Joiner's objection, it granted the government's requested change and removed "coerce" from the final jury instructions. Also at the end of Joiner's case, he asked the district court to provide the jury his proposed entrapment defense instruction, but the district court declined to do so.

The jury convicted Joiner of violating § 2422(b). Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report (PSR). The PSR found a United States Sentencing Guidelines (USSG) total offense level of 32 and a criminal history category of II. It calculated Joiner's Guidelines range as 135 to 168 months imprisonment. Joiner moved for a downward departure and variance, arguing that the PSR's criminal history category over-represented the seriousness of his criminal history and likelihood that he would commit future crimes. The district court denied his motion and sentenced Joiner to 150 months imprisonment and 5 years supervised release.

II.

Joiner challenges the sufficiency of the evidence to convict him under § 2422(b). We review "the sufficiency of the evidence de novo, viewing evidence

in the light most favorable to the jury's verdict, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Kempter, 29 F.4th 960, 965 (8th Cir. 2022) (citation omitted). We overturn a jury's verdict "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id. (citation omitted).

To convict a defendant of inducing a minor to engage in illegal sexual activity, in violation of § 2422(b), the government must prove that the defendant:

> (1) used a facility of interstate commerce, such as the internet or telephone system; (2) knowingly used the facility of interstate commerce with intent to persuade or entice a person to engage in illegal sexual activity; and (3) believed that the person he sought to persuade or entice was under the age of eighteen.

United States v. Shinn, 681 F.3d 924, 931 (8th Cir. 2012) (citation omitted). "A conviction based on attempt requires proof that the defendant intended to commit the predicate offense and conduct that constitutes a substantial step towards the crime's commission." Kempter, 29 F.4th at 965. Joiner argues that the evidence presented by the government satisfies neither of the two elements of attempt.

We first consider whether the evidence sufficiently demonstrates Joiner's intent to commit the predicate offense. "The element of intent 'need not be proved directly and can be inferred from the facts and circumstances surrounding a defendant's actions.'" United States v. Patten, 397 F.3d 1100, 1102-03 (8th Cir. 2005) (citation omitted). Joiner notes that his conversation with the undercover officer was not sexual and that no sexually explicit photos were shared or requested. He claims that he never agreed to or suggested a specific sexual activity. Joiner distinguishes his case from United States v. Young, in which an internet chat became progressively more sexually explicit and included specific mention of sexual acts that might be performed. 613 F.3d 735, 739 (8th Cir. 2010). We agree that Joiner's text-message conversation is distinguishable from the Young internet chat, but Joiner's initial response to the online advertisement coupled with his subsequent text

messages provide a reasonable inference of his intent to persuade a minor to engage in sexual activity. Joiner responded to an advertisement listing prices by length of time for featured sexual activities. Joiner repeatedly acknowledged the undercover officer's fictional underage status, yet he persisted in wanting to meet the undercover officer, even after the undercover officer declined his housecleaning offer and suggested that he find an older female. Joiner told the undercover officer that he would pay cash or buy "her" an iTunes gift card, as requested in the advertisement, and Joiner confirmed that he had reviewed the advertisement and wanted the listed sexual activities. Joiner also agreed to the use of condoms. Joiner's assertion that he intended to pay the undercover officer for housecleaning "simply created a factual dispute for the jury to resolve, and a reasonable jury could have found unpersuasive his testimony that he was not serious" about paying for sexual activity. United States v. Hensley, 982 F.3d 1147, 1155 (8th Cir. 2020).

Next, we review whether the evidence sufficiently demonstrates that Joiner's conduct constituted a substantial step toward the crime's commission. "An attempt exists when a defendant's actions go 'beyond mere preparation; [are] necessary to the consummation of the crime; and . . . strongly corroborate [the defendant's] criminal intent to [commit the predicate offense].'" Young, 613 F.3d at 742 (alterations in original) (citation omitted). Joiner asserts that the evidence demonstrates, at best, mere preparation by traveling to the gas station, because he never agreed to a sexual activity and therefore had not committed an act necessary to the consummation of a crime. However, our review of the text-message conversation indicates that Joiner did agree to sexual activity by texting that he wanted what was listed in the advertisement (six explicit sexual services). Regarding Joiner's travel to the gas station, he cites United States v. Nitschke for the proposition that "travel ultimately has nothing to do with [a § 2422(b) violation]," because "[t]he crime is complete with the persuasion or attempted persuasion, both of which are necessarily confined to the interstate communications." 843 F. Supp. 2d 4, 16 (D.D.C. 2011). We agree with the government that Nitschke, rather than helping Joiner, hurts him by demonstrating that the text-message conversation itself was the substantial step. By sending text messages offering money or a gift card in

exchange for sexual services listed in the advertisement, Joiner attempted to *persuade*, *induce*, or *entice* a 15-year-old minor to engage in sexual activity.  Section 2422(b) does not require an attempt to actually engage in sexual activity.  See United States v. Berg, 640 F.3d 239, 252 (7th Cir. 2011); see also Patten, 397 F.3d at 1103 (explaining that "intent that violates § 2422(b) is the intent to persuade a minor to engage in illegal sexual activity," not intent that sexual activity occur).  Accordingly, we conclude that the evidence was sufficient to establish Joiner's guilt.

III.

Joiner next challenges the district court's refusal of his proffered jury instruction on the defense of entrapment.  "The refusal of a proffered entrapment instruction is a denial of a legal defense."  United States v. Strubberg, 929 F.3d 969, 976 (8th Cir. 2019) (citation omitted).  "We review the district court's denial of a proffered legal defense de novo."  Young, 613 F.3d at 743.

"A defendant is entitled to an instruction on the affirmative entrapment defense if sufficient evidence exists from which a reasonable jury could find that [the] government entrapped him."  Strubberg, 929 F.3d at 976 (alteration in original) (citation omitted).  "[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in criminal conduct."  United States v. Wynn, 827 F.3d 778, 786 (8th Cir. 2016) (alteration in original) (citation omitted).  "Evidence that Government agents merely afforded an opportunity or facilities for the commission of the crime would be insufficient to warrant an entrapment instruction."  Strubberg, 929 F.3d at 976 (citation omitted).  Joiner argues that the evidence presented at trial satisfies both elements of entrapment.

"[T]o warrant an entrapment instruction, a defendant must first present evidence that the government induced the criminal conduct."  Young, 613 F.3d at 746-47.  We consider four factors to determine inducement:

(1) whether the government initiated the contact; (2) the effect of the photos sent by the government; (3) whether the government introduced the topics of meeting and sex; and (4) the degree to which the government influenced the behavior of the defendant by portraying the minor as sexually precocious.

United States v. Tobar, 985 F.3d 591, 593 (8th Cir. 2021). First, the government did not initiate contact because, although it posted the advertisement, the advertisement was not directed to Joiner but instead was publicly available, and Joiner chose to respond to it by messaging the undercover officer at the phone number listed. Second, the effect of the single photo sent by the undercover officer to Joiner, depicting a clothed female, was negligible. See id. (explaining that, to the extent photos of a clothed female portrayed her as sexually precocious, it was "only to a minor degree"). And while sexually suggestive photos appeared in the advertisement, the advertisement was not directed or addressed to Joiner. See id. Next, Joiner, not the government, introduced the topic of meeting. As to who introduced the topic of sex, the topic indirectly arose when Joiner asked what the undercover officer offered, and the undercover officer told him to look at the advertisement. On the third and fourth factors, we disagree with Joiner's claim that the undercover officer repeatedly tried to persuade him to agree to sex, thereby making the fictional minor appear sexually precocious. Joiner persisted in wanting to meet the undercover officer after the undercover officer shared that "she" was 15 years old, declined Joiner's housecleaning offer, and suggested that Joiner find an older female. Only in response to Joiner asking to meet did the undercover officer ask how long the meeting would be and what it would entail.

We conclude, upon applying the four factors, that Joiner fails to establish that the government induced him to violate the law. Because Joiner does not satisfy the threshold issue of inducement, see United States v. Myers, 575 F.3d 801, 805 (8th Cir. 2009), we need not consider the second element of entrapment, Joiner's predisposition. Ultimately, because Joiner has not presented "sufficient evidence from which a reasonable jury could find entrapment," Mathews v. United States, 485 U.S. 58, 62 (1988), the district court correctly denied his requested jury instruction.

IV.

Joiner further asserts that the district court erred by refusing to instruct the jury on the term "coerce" as it appears in § 2422(b), over his objection. "We review challenges to jury instructions under a deferential abuse of discretion standard and 'will not find error when the jury instruction fairly and adequately submitted the issue to the jury.'" United States v. Wilkins, 25 F.4th 596, 600 (8th Cir. 2022) (citation omitted).

Although § 2422(b) may be violated via attempted persuasion, inducement, enticement, or coercion, the superseding indictment charged Joiner with attempting "to persuade, induce, and entice" a minor. Joiner was not charged with attempted coercion. Nevertheless, at trial, the district court and Joiner's counsel said that Joiner had been charged with attempted coercion, as did the government's proposed jury instructions. At the close of the government's case, when it realized that the superseding indictment had not charged Joiner with attempted coercion, the government moved to modify its proposed jury instructions to remove the term "coerce." The district court granted the motion, removed the term, and gave the following instruction:

> [I]t is necessary for the government to prove that the defendant intended to persuade, induce, or entice an individual to engage in some form of unlawful sexual activity and knowingly and willfully took some action that was a substantial step toward persuading, inducing, or enticing an individual to engage in some form of unlawful sexual activity.

R. Doc. 53, at 14. The final jury instructions also informed the jury that Joiner had been charged with "[t]he crime of Attempting to Persuade, Induce, or Entice a Minor to Engage in Sexual Activity, as charged in Count I of the Superseding Indictment." R. Doc. 53, at 14.

The district court determined that the inclusion of "coerce" could result in a constructive amendment of the indictment. Joiner disagrees.

-9-

> A constructive amendment occurs when the essential elements of the offense *as charged in the indictment* are altered in such a manner—often through the evidence presented at trial or the jury instructions—that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the indictment.

United States v. Whirlwind Soldier, 499 F.3d 862, 870 (8th Cir. 2007) (emphasis added). "A constructive amendment of an indictment is a direct violation of a defendant's Fifth Amendment right to be charged by a grand jury and is reversible error per se." United States v. Harris, 344 F.3d 803, 804 (8th Cir. 2003) (per curiam). Even though coercion is listed in § 2422(b), the indictment returned by the grand jury did not charge Joiner with attempted coercion. We agree with the district court that the inclusion of "coerce" in the final jury instructions potentially could have impermissibly constructively amended the superseding indictment.

Joiner next argues without citation to authority that removal of the term "coerce" from the final jury instructions likely confused the jury and thus prejudiced him.[4] We disagree. At trial, neither party argued that there was evidence of coercion.[5] The district court thus properly refused to include the issue of coercion in the final jury instructions. See Reed v. Malone's Mech., Inc., 765 F.3d 900, 907 (8th Cir. 2014) ("The jury should receive instructions on issues supported by competent evidence in the record; the trial court is not required to instruct on issues that do not find support in the record." (citation omitted)). Further, "[a] jury is presumed to follow its instructions." United States v. Thomas, 877 F.3d 1077, 1079

---

[4]Joiner does not contend that the final instructions contained an inaccurate statement of law.

[5]Defense counsel's discussion of coercion in his opening statement was not evidence. See United States v. Dinitz, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring) ("An opening statement has a narrow purpose and scope. It is to state what evidence *will be* presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole . . . ." (emphasis added)).

(8th Cir. 2017) (citation omitted). Accordingly, Joiner has shown no juror confusion when the instructions accurately detailed the charged offense and reflected the issues supported by evidence presented at trial and the jury presumably followed those instructions.

V.

Finally, Joiner contends that the district court erroneously denied his motion for a downward departure and variance at sentencing. "When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply 'a deferential abuse-of-discretion standard.'" United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (citation omitted). We presume the reasonableness of a within-Guidelines sentence. United States v. Sisk, 999 F.3d 631, 635 (8th Cir. 2021) (citation omitted).

Joiner focuses on the district court's reliance on the PSR's criminal history category of II in its decision to impose a within-Guidelines sentence of 150 months imprisonment. At sentencing, the district court determined, "As to departure and variance, the defendant's criminal history is not overstated given the number of convictions and the correct calculations of criminal history." The PSR detailed Joiner's 22 previous adult criminal convictions, though it only assessed 3 criminal history points for an 18-month sentence imposed in 2004 after his supervised release for a 1997 conviction was revoked.[6] Because Joiner was released in December 2005, 14 years and 3 months before his text-message conversation with the undercover officer, his 2004 sentence of imprisonment counted toward the criminal history calculation. See USSG § 4A1.2(e)(1) (directing courts to "count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of [the] fifteen-year period" preceding "the defendant's commencement of the instant offense"). Joiner

---

[6]The PSR did not assess points for the other 21 convictions apparently either due to the age of the convictions or the relatively minor status of some of the offenses.

acknowledges that his sentence fell within the Guidelines' lookback period and does not dispute the accuracy of the district court's advisory Guidelines calculation. He also offers no mitigating circumstances not already accounted for in the Guidelines to justify a downward departure. See USSG § 5K2.0(b) (permitting downward departures in child crimes and sexual offenses "only if the [district] court finds that there exists a mitigating circumstance of a kind, or to a degree, that . . . has not adequately been taken into consideration by the Sentencing Commission in formulating the guidelines"). Joiner's criminal history score was consistent with the Guidelines. We therefore conclude that Joiner has not rebutted the presumption of reasonableness that attaches to his within-Guidelines sentence, see Sisk, 999 F.3d at 635, and that the district court did not abuse its discretion at sentencing.

VI.

For the foregoing reasons, we affirm the judgment of the district court.

_____