# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2444
_____

United States of America

*Plaintiff - Appellee*

v.

John K. Perry

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 18, 2013
Filed: May 6, 2013

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

From 2001 through June 2004, John Perry was the Materials, Planning, and Logistics Manager at Ford Motor Company's Assembly Plant in Hazelwood, Missouri. His duties included approving invoices for payment to various vendors that provided logistical and transportation services. In 2011, Perry was charged with four counts of willful income tax evasion in violation of 26 U.S.C. § 7201 for failing to

report and then concealing kickbacks received from Ford vendors during each of the 2001 through 2004 tax years. A jury convicted Perry on all counts after a six-day trial. Following a lengthy sentencing hearing, the district court[1] overruled most of Perry's objections to the tax loss calculations contained in the Presentence Investigation Report ("PSR") and sentenced him to 51 months in prison. Perry appeals his conviction, raising statute of limitations and suppression issues, and his sentence, arguing the district court erred in calculating tax loss, denying his request for a downward variance, and requiring that he pay $926,602.75 in restitution to the Internal Revenue Service ("IRS") as a condition of supervised release. We affirm.

## I. The Statute of Limitations Issue.

Tax evasion is defined in § 7201 as willfully attempting "in any manner to evade or defeat any tax imposed by this title or the payment thereof." The elements of this felony offense "are willfulness; the existence of a tax deficiency; and an affirmative act constituting an evasion or attempted evasion of the tax." Sansone v. United States, 380 U.S. 343, 351 (1965) (citations omitted). "[A]ny conduct, the likely effect of which would be to mislead or to conceal for tax evasion purposes, can constitute an affirmative act of evasion." United States v. Schoppert, 362 F.3d 451, 460 (8th Cir.) (quotations omitted), cert. denied, 543 U.S. 911 (2004); see United States v. Silkman, 156 F.3d 833, 835 (8th Cir. 1998). Prosecution of this offense is subject to the six-year statute of limitations in 26 U.S.C. § 6531(2).

Perry was first indicted on March 24, 2011. Each count of the superseding indictment charged that he willfully attempted to evade taxes by preparing and filing a false and fraudulent federal income tax return for the year at issue, "and by making false statements to an IRS Special Agent" in August 2006. The district court

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

instructed the jury, without objection, that (i) the methods of evasion charged in each count were filing false returns and making false statements to an IRS agent; (ii) the jury must find unanimously that the government proved at least one of the methods of evasion charged; and (iii) "at least one of the acts of evasion alleged in that count occurred after March 24, 2005."[2]

On appeal, Perry argues the government introduced insufficient evidence that he lied when IRS Special Agent Juli Ricchio interviewed him on August 26, 2006, and therefore the counts charging willful attempts to evade taxes due for the 2001 through 2003 tax years were time-barred. Recounting that interview, Agent Ricchio testified that Perry disclaimed any involvement in a fraudulent invoice scheme at Ford and denied receiving cash payments or kickbacks from vendor Thomas Buske or his companies. The government introduced evidence that Buske paid Ford manager Perry substantial kickbacks in the form of cash and indirect payments for his role in various fraudulent schemes, including cash payments of $18,000 to $25,000 per month from 2001 to early 2004; purchase of a Jaguar and Lincoln Aviator for Perry and his then-wife, Tammy; and payments for a costly addition to Perry's home in Lake St. Louis and for Perry's purchase of two properties in Breckenridge, Colorado. The government also introduced handwritten ledgers, found in Perry's safe, that divided illicit profits from specific inflated invoices between Buske and Perry.

In addition to receiving kickbacks from Buske, the owners of a transportation logistics company testified that Perry forced them to pay him $10,000 to $20,000 per month to keep their contract with Ford, disguising the bribes as "consulting fees." Perry failed to report these kickbacks and bribes as income on his tax returns for the 2001 through 2004 tax years. By convicting Perry on all four counts, the jury

---

[2]This interpretation of the six-year statute of limitations was consistent with the decisions of many of our sister circuits. See United States v. Irby, 703 F.3d 280, 283-84 (5th Cir. 2012), and cases cited; United States v. Dandy, 998 F.2d 1344, 1355-56 (6th Cir. 1993), cert. denied, 510 U.S. 1163 (1994).

necessarily found that Perry lied to Agent Ricchio during the August 2006 interview in a continuing attempt to evade his income tax liabilities. After careful review of the trial record, we conclude there was more than sufficient evidence for a reasonable jury to find beyond a reasonable doubt, with respect to each count, that Perry committed an act of tax evasion within six years of the indictment.

## II. Suppression Issues.

Based on information provided by an employee of Buske's company and by Perry's ex-wife, Tammy, Postal Inspector Michael Levinson applied for a warrant to search a residence in Vermillion, Ohio, where Perry moved after the divorce. The warrant issued and was executed on August 26, 2006. Agent Ricchio interviewed Perry at the residence while federal agents completed the warrant search. Prior to trial, Perry moved to suppress statements he made during that interview and evidence seized during the search. He now appeals the district court's denial of these motions following separate evidentiary hearings.

**A.** Perry first contends the district court erred in not suppressing, as involuntary, statements he made during Agent Ricchio's interview. "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc) (quotations omitted), cert. denied, 543 U.S. 1145 (2005). We review the district court's fact findings for clear error and its legal conclusion that the statements were voluntary *de novo*. Id.

At the suppression hearing, Agent Ricchio testified that she interviewed Perry in the dining room after being told by another agent that Perry said he wanted a lawyer when he first answered the door. Agent Ricchio told Perry he was free to leave or stay during the warrant search and, when he chose to stay, that she would not

question him because he wanted an attorney but would explain why the agents were there. She explained they were investigating fraud against Ford Motor Company, and they believed Perry had used his position at Ford to approve fraudulent invoices. Perry testified that he immediately told the agents he wanted an attorney when he first answered the door, then refused to talk to Agent Ricchio despite her repeated attempts to ask questions, and finally agreed to talk only after she told him that he was not the main target of their investigation. The district court found that Agent Ricchio truthfully advised Perry of the reason for the search and that he was a subject of their investigation. The court concluded that, even if Perry was told he was not a target, his "will was not overborne and any such representations would not be sufficient to require a suppression of [his] statements."

On appeal, Perry argues his statements should have been suppressed because Agent Ricchio "was inaccurate, mistaken, wrong or untruthful . . . at the motion hearing and then at trial." The district court's finding that Agent Ricchio did not deceive Perry was an assessment of her credibility that was not clearly erroneous. In addition, we agree with the court's conclusion that any deception regarding whether Perry was a target of the investigation did not render his statements involuntary. See United States v. Brave Heart, 397 F.3d 1035, 1041 (8th Cir. 2005); LeBrun, 363 F.3d at 724. Agent Ricchio did not make threats, display her weapon, raise her voice, or promise Perry he would not be arrested or prosecuted. Perry was an educated and sophisticated 50-year-old Ford manager who gave every indication he understood the nature of the investigation and Agent Ricchio's questions.

**B.** In a separate pretrial motion, Perry requested a hearing under Franks v. Delaware, 438 U.S. 154 (1978), alleging that Inspector Levinson's warrant affidavit contained materially false information. In support, Perry submitted an affidavit challenging the accuracy and relevance of Levinson's recitation of information conveyed by Tammy and the other informant. The district court denied the motion, concluding that Perry failed to make a "substantial preliminary showing of deliberate

falsehood or reckless disregard for the truth." United States v. Carnahan, 684 F.3d 732, 735 (8th Cir.) (quotations omitted), cert. denied, 133 S. Ct. 625 (2012). On appeal, Perry argues it was error to deny a Franks hearing because the allegations in Levinson's warrant affidavit were refuted by Perry's affidavit. We review the denial of a Franks hearing for abuse of discretion. United States v. Moore, 129 F.3d 989, 992 (8th Cir. 1997), cert. denied, 523 U.S. 1067 (1998). Merely averring that a warrant affidavit contained false information is not sufficient. "When no proof is offered that an affiant deliberately lied or recklessly disregarded the truth, a Franks hearing is not required." Id. There was no abuse of discretion.

### III.  Sentencing Issues.

**A.  Tax Loss Calculations**. To reflect the seriousness of a willful tax evasion offense, the advisory guidelines increase the base offense level by the amount of the "tax loss," that is, "the total amount of loss that was the object of the offense," including interest, as reflected in the guidelines Tax Loss Table. See U.S.S.G. §§ 2T1.1(a)(1), (c)(1), comment. (n.1), and 2T4.1. Consistent with IRS calculations, the amended PSR reported that Perry willfully failed to report $1,594,329 in gross income in the 2001-2004 tax years, resulting in a total tax loss of $926,602 -- $578,226 in unpaid income taxes plus $348,376 in interest. This produced a base offense level of 20. See § 2T4.1(H) (tax loss of more than $400,000 and not more than $1,000,000). The district court then imposed two two-level enhancements under § 2T1.1(b)(1) and (2), resulting in an advisory range of 51 to 63 months in prison.

At sentencing, Perry raised a plethora of fact-intensive objections to this tax loss computation. Relying on evidence presented at trial, the district court overruled most but not all of Perry's objections. On appeal, Perry argues the district court clearly erred in not deducting from the gross amount of unreported taxable income (i) up to $500,000 Perry "may have contributed" to a scheme to defraud a Ford vendor;  (ii) $131,500 paid by Buske for the addition to Perry's Lake St. Louis home

-6-

and payments Buske made toward two Colorado properties because they were loans Perry intended to repay; (iii) the new Jaguar purchased by Buske because it was income only to Tammy; (iv) cash payments by Buske for a boat lift and a Lincoln Aviator that were double-counted; and (v) $12,000 in other payments that were not proved at trial.

A district court may rely on evidence presented at trial, and its "factual findings regarding the amount of tax loss will be upheld unless clearly erroneous." United States v. Willis, 277 F.3d 1026, 1035 (8th Cir. 2002). We are satisfied that the district court's tax loss findings were not clearly erroneous. But in any event, we need not consider these issues because Perry makes no showing that the items in question -- individually or in combination -- would have lowered his base offense level by reducing the net tax loss from $926,602 to less than $400,000.[3]

**B. Reasonableness of the 51-Month Sentence.** At sentencing, Perry moved for a downward departure under U.S.S.G. § 5K2.20 for aberrant criminal behavior and urged the district court to grant a downward variance and sentence him to a term of probation or a prison sentence substantially below the bottom of the advisory guidelines range. After carefully balancing mitigating factors such as Perry's age and lack of a criminal record with the seriousness of the offense, the many victims, and Perry's steadfast refusal to accept responsibility for his greedy actions, the district court concluded that a sentence at the bottom of the advisory range will "provide adequate deterrence, protect the community, achieve parity with the sentences of similarly situated individuals and possibly allow you to be released from prison at a time when you will be able . . . to provide restitution." On appeal, Perry argues this

---

[3]Perry also argues, without citation to authority, that the amount of tax loss should have been submitted to the jury and should not include interest. These contentions are without merit. See United States v. Tucker, 217 F.3d 960, 961 (8th Cir. 2000) (the government must prove fact-intensive issues such as tax loss by a preponderance of the evidence at sentencing); U.S.S.G. § 2T1.1 comment. (n.1).

sentence is substantively unreasonable because "he should not be in prison for this length of time for this kind of offense."[4]  A sentence within the guidelines range is presumptively reasonable on appeal.  See, e.g., United States v. Borromeo, 657 F.3d 754, 756 (8th Cir. 2011).  Here, nothing in the record convinces us that the district court abused its considerable discretion in fashioning an appropriate sentence.  See United States v. Feemster, 572 F.3d 455, 464 (8th Cir. 2009) (en banc).

**C.  Restitution Issues.**  The sentence imposed by the district court included, as a special condition of supervised release, an order that Perry pay restitution to the IRS, as the victim of his tax evasion offense, the amount of the tax loss determined by the court in determining the advisory guidelines range -- $926,602.75, consisting of $578,226 in total tax deficiencies for the four tax years in question plus $348,376.75 in interest.  Perry does not challenge the calculations underlying this amount but raises a number of legal issues on appeal.

1.  Perry contends the restitution order must be vacated because the Victim and Witness Protection Act ("VWPA") and the Mandatory Victims Restitution Act ("MVRA") do not apply to Title 26 offenses.  See 18 U.S.C. §§ 3663(a)(1)(A), 3663A(c)(1).  However, as many circuits have noted, Congress has explicitly granted district courts discretionary authority to "make restitution to a victim of the offense" a condition of supervised release, without regard to whether the defendant committed an offense enumerated in §§ 3663(a)(1)(A) or 3663A(c)(1).  See 18 U.S.C. §§ 3563(b)(2), 3583(d), 3556; United States v. Hassebrock, 663 F.3d 906, 923-25 (7th Cir. 2011) (collecting cases), cert. denied, 132 S. Ct. 2377 (2012); U.S.S.G. § 5E1.1(a)(2).  Here, unlike the record on appeal that caused a remand in Hassebrock,

---

[4]Perry does not appeal the denial of his motion for a downward departure, and rightly so.  "A district court's refusal to grant a downward departure under the sentencing guidelines is unreviewable unless the court had an unconstitutional motive in denying the request or failed to recognize that it had the authority to depart downward."  United States v. Dixon, 650 F.3d 1080, 1084 (8th Cir. 2011).

the district court made clear that restitution was being ordered as a condition of Perry's supervised release, not pursuant to the VWPA or the MVRA.[5]

2. Perry contends that the district court lacked statutory authority to include $348,376.75 in interest in the restitution order. We disagree. In fashioning a restitution order, the district court must "order restitution to each victim in the *full amount* of each victim's losses . . . ." 18 U.S.C. § 3664(f)(1)(A) (emphasis added), a statute made applicable to restitution ordered as a special condition of supervised release by 18 U.S.C. § 3556. Federal tax law imposes interest on tax delinquencies to compensate the government for the time-value of its loss. See 26 U.S.C. § 6601. Accordingly, the district court did not abuse its discretion by including interest in a restitution order intended to compensate the IRS as a victim for the full amount of its losses from Perry's evasion of income taxes owed for the 2001-2004 tax years. Accord United States v. Ellefsen, 655 F.3d 769, 782 (8th Cir. 2011) (affirming a restitution award to the IRS that included interest); Hassebrock, 663 F.3d at 926 (same); United States v. Qurashi, 634 F.3d 699, 703-04 (2d Cir. 2011).[6]

3. As part of its broader investigation of Buske's alleged schemes to defraud Ford and other victims, the government seized approximately $660,000 from Perry's

_____

[5]Another way to impose essentially the same special condition is to require that the defendant while on supervised release comply with the tax laws and cooperate with the IRS by filing tax returns and paying amounts due. As this type of condition is *not* an order of restitution, United States v. Miller, 557 F.3d 919, 921 (8th Cir. 2009), remedies for non-compliance may not be subject to the strictures of 18 U.S.C. § 3613A(a)(2), which produced complex fact issues in cases such as United States v. Holt, 664 F.3d 1147, 1150 (8th Cir. 2011), cert. denied, 132 S. Ct. 1981 (2012).

[6]Perry's further contention that interest could not be included because the government did not present evidence of the interest owing at trial is without merit. The amount of restitution is a sentencing issue that the government must prove at sentencing by a preponderance of the evidence. See Ellefsen, 655 F.3d at 782.

TD Ameritrade account in January 2007 and initiated a civil action in the Eastern District of Wisconsin to forfeit the funds as proceeds of a money laundering conspiracy involving Perry and Buske. See 18 U.S.C. § 981(a)(1)(A). At sentencing, Perry argued that the seized funds should offset his restitution liability. At that time, the forfeiture action was stayed pending resolution of the government's criminal prosecution of Perry.[7]

Responding to this contention, the government represented that, should it prevail in the forfeiture action, it would use the seized funds to compensate the victims of Perry's fraudulent schemes, so no double recovery by the United States would occur. Government counsel advised that the seized funds were being held in an interest-bearing account but could not assure the court that all interest earned would also go to the victims, not to the government. After hearing argument on the issue, the court denied Perry's request for an offset because no offset would be warranted if the Wisconsin court determines that the funds are "properly forfeited and are used to pay restitution toward victims," or if the government's forfeiture action is dismissed and the funds "come back to Mr. Perry." Regarding the uncertain interest issue, the court's order provided that any interest ultimately retained by the government would offset the interest portion of Perry's restitution obligation. Perry appeals the court's denial of his offset request.

The question whether funds forfeited to the government should offset a criminal restitution order to the government as victim in order to avoid a double recovery raises complex and difficult issues of law and fact that are not properly addressed in the abstract. Compare United States v. Ruff, 420 F.3d 772, 776 (8th Cir. 2005), with United States v. Taylor, 582 F.3d 558, 566 (5th Cir. 2009), cert.

_____

[7]See United States v. Approximately $659,990.83 in U.S. Currency in TD Ameritrade Account Ending in 0902 Held in the Name of John K. Perry, Case No. 2:07-CV-00264, Order Granting Motion to Stay (E.D. Wis. Mar. 20, 2008).

denied, 130 S. Ct. 1116 (2010), and United States v. Emerson, 128 F.3d 557, 567-68 (7th Cir. 1997). Here, as the district court wisely noted, the civil forfeiture action is pending, and therefore whether the seized funds will ultimately be forfeited, and if so, where they will be distributed, is unknown. Moreover, the sentencing record does not clarify the basis for the government's forfeiture action, which likely was not Perry's income tax evasion, or the source of the funds seized, or whether any part of those funds were unreported income that increased Perry's restitution liability. Thus, Perry's allegation of double recovery is entirely speculative and his request for an offset was properly denied, even if an offset would be appropriate to avoid double recovery by the IRS or by the United States government, an issue we decline to address. All such questions must await final resolution of the forfeiture action or enforcement of the restitution order, at which time the district court will retain authority to modify the amount of restitution as may be appropriate. See 18 U.S.C. § 3664(j)(2); United States v. Manzer, 69 F.3d 222, 230-31 (8th Cir. 1995).

4. Finally, Perry argues the district court should have "split" his restitution tax liability because it is "grossly unfair" to permit ex-wife Tammy to reap more than half the benefits from their joint tax evasion in the subsequent divorce, while making Perry repay the IRS's entire loss. This is not an issue of law because the restitution statutes only grant authority to "apportion liability" among multiple defendants, and Tammy was not a co-defendant. See 18 U.S.C. § 3664(h). Therefore, we question whether the district court had discretion to order Perry to pay an amount of restitution less than the IRS's entire tax loss; joint filers are jointly and severally liable for income tax deficiencies. See 26 U.S.C. § 6013(d)(3). But even if the court had such discretion, it was not abused. Noting that the IRS may seek recovery of taxes owed from either Tammy or Perry, the district court eliminated any risk of double recovery by expressly providing that "[t]he restitution amount attributable to the tax deficiency

shall be reduced by any portion of the tax deficiency received by the Internal Revenue Service from Tammy Perry, Mr. Perry's ex-wife." That was an eminently fair ruling.

The judgment of the district court is affirmed.

_____