# United States Court of Appeals

### For the Eighth Circuit

———————————————

No. 19-1263

———————————————

United States of America

*Plaintiff - Appellee*

v.

Scott Phillip Flynn

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Minnesota

——————————

Submitted: June 17, 2020
Filed: August 13, 2020

——————————

Before GRUENDER, WOLLMAN, and KOBES, Circuit Judges.

——————————

KOBES, Circuit Judge.

Scott Phillip Flynn pleaded guilty to conspiracy to defraud the United States and filing a false tax return. *See* 18 U.S.C. § 371; 26 U.S.C. § 7206(1). He tried to

withdraw his plea before sentencing, but the district court[1] denied his motion and sentenced him to 87 months in prison—60 months for the conspiracy charge and 27 months for the false return—and ordered him to pay roughly $5.4 million in restitution. Flynn appeals, arguing that he should have been allowed to withdraw his guilty plea, his conspiracy conviction is void for vagueness, the restitution order was procedurally improper and clearly erroneous, and the district court wrongly applied an organizer or leader enhancement when it calculated his sentence. We find no error and affirm.

## I.

Flynn's convictions arise out of two "reverse merger" transactions that he assisted in 2006 and 2008.[2] As payment, he received shares of stock in the resulting public companies. He transferred millions of these shares to two companies he controlled and, with the help of a co-conspirator, transferred millions more into the hands of Australian nominees. These Australian nominees placed their shares in U.S. brokerage accounts that Flynn could access.

From 2006 to 2014, Flynn controlled these accounts and used them to sell around $15 million worth of stock and transfer the proceeds to Australian bank accounts that he also controlled. In 2007, he purchased a house with $2.7 million of

---

[1] The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

[2] The Securities and Exchange Commission explains that a reverse merger offers an alternative to an initial public offering. In this transaction, an existing public "shell" company acquires the shares to a private corporation and in exchange the shareholders of the private corporation become the controlling shareholders of the public shell company. The result is the public entity takes over the private one, but the public company's business operations are "primarily, if not solely, those of the former private company." *Reverse Mergers*, Investor.gov, https://www.investor.gov/news-alerts/investors-bulletins/reverse-mergers (last visited July 2, 2020).

that money and yet only reported $26,136 of income on his tax return. Over the course of the conspiracy, all $15 million in sales was income to Flynn and he reported none of it.

Flynn stipulated to all these facts as part of his guilty plea. At his change of plea hearing, Flynn said he knew that pleading guilty meant his case would never go to trial, he had discussed his case with his lawyers and was satisfied with their representation, and he understood the rights he was waiving by pleading guilty. The court then read portions of the indictment and Flynn stated that he had read and understood the entire document with the help of his attorneys. Finally, the court reviewed the agreed-upon sentencing calculations described in the plea, including the application of a four-point enhancement because Flynn was an organizer or leader of an otherwise extensive scheme and a two-point reduction for acceptance of responsibility. Only then did the district court accept Flynn's guilty plea.

Six months later, just over a week before he was scheduled to be sentenced, Flynn (through new counsel) moved to continue his sentencing and withdraw his guilty plea, disavowed the stipulations contained in the plea, and asserted his innocence. The district court denied that motion. At sentencing, the district court enforced the agreement as written and Flynn received the two-point reduction for acceptance of responsibility even though the Government did not request it. It sentenced him to 87 months in prison and ordered him to pay $5,392,442.87 in restitution. Flynn timely appealed.

II.

Flynn first argues that he should have been allowed to withdraw his guilty plea because it was not knowing and voluntary, lacked a factual basis, and the Government breached the agreement. A defendant may withdraw a guilty plea after it has been accepted by the district court if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "There is no *right* to withdraw; the plea of guilty is a solemn act not to be disregarded because of belated

-3-

misgivings about its wisdom." *United States v. Andolini*, 705 F.3d 335, 337 (8th Cir. 2013) (citation omitted) (emphasis in original). If a defendant establishes a fair and just reason for withdrawal, the district court must then consider "whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion." *United States v. Heid*, 651 F.3d 850, 853–54 (8th Cir. 2011) (citation omitted). We review the denial of a motion to withdraw a plea for abuse of discretion. *Andolini*, 705 F.3d at 337.

A.

Flynn's first "fair and just" reason for withdrawal is that he was not informed of the nature of the charges against him, so his plea was not knowing and voluntary. *See* Fed. R. Crim. P. 11(b)(1)(G). Whether a plea was knowing and voluntary presents a mixed question of law and fact that we review *de novo*. *United States v. Gray*, 152 F.3d 816, 819 (8th Cir. 1998). We assess whether Flynn understood the nature of the charges by examining the totality of the circumstances. *United States v. Marks*, 38 F.3d 1009, 1011 (8th Cir. 1994). We consider "whether the indictment gave him notice of the charge, whether he discussed the charge with his attorney or the judge, and . . . any other facts which are in the record." *Id.*

The record shows Flynn understood how the law related to the facts of his case. *See United States v. Johnson*, 715 F.3d 1094, 1103 (8th Cir. 2013). The district court read aloud the relevant counts of his indictment, ensured he understood and had discussed those counts with his attorneys, he was satisfied with his attorneys, and he had discussed the rights he was waiving "at some length" with them. Nevertheless, Flynn complains that the indictment did not list the elements of his conspiracy charge and suggests that circuit courts inconsistently describe those elements, to the point where it was impossible for Flynn (or seemingly anyone else) to understand the charges.

-4-

Flynn pleaded guilty under the portion of 18 U.S.C. § 371 that prohibits conspiring to defraud the United States. When such a conspiracy is specifically focused on defrauding the IRS in its efforts to assess and collect taxes, it is commonly referred to as a *Klein* conspiracy. *United States v. Fletcher*, 322 F.3d 508, 513 (8th Cir. 2003); *United States v. Klein*, 247 F.2d 908 (2d Cir. 1957), *cert. denied*, 355 U.S. 924 (1958). Flynn alleges *Klein* conspiracies are unconstitutionally vague because federal circuit courts disagree on the elements necessary to secure a conviction.

Although the circuits subdivide the crime into different elements, all describe the same offense. We describe the crime with two elements. *Fletcher*, 322 F.3d at 513 ("To convict a defendant of a *Klein* conspiracy, the government must show the existence of an agreement to defraud the IRS and an overt act by one of the conspirators in furtherance of the agreement's objectives."). The Third Circuit has used three. *United States v. Shoup*, 608 F.2d 950, 956 (3d Cir. 1979) ("To establish a [*Klein*] conspiracy . . . . the prosecution must prove three elements: (1) the existence of an agreement, (2) an overt act by one of the conspirators in furtherance of the objectives, and (3) an intent on the part of the conspirators to agree, as well as to defraud the United States."). And the Second, four. *United States v. Coplan*, 703 F.3d 46, 61 (2d Cir. 2012, *cert. denied*, 571 U.S. 819 (2013) ("[T]o prove a *Klein* conspiracy, the Government must show (1) that the defendant entered into an agreement (2) to obstruct a lawful function of the Government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy.") (quotations and alterations omitted). But, in substance, each of these cases describes the same crime. And in any event, the district court properly applied the well-settled law in this circuit and the elements of Flynn's offense were laid out in his indictment and read aloud to him at his change of plea hearing.

Flynn also argues that both counts of conviction depended on a finding that he exercised dominion and control over the $15 million and this requirement was not explained to him. But the indictment alleged that Flynn exercised dominion and control over the funds, he admitted he did in his plea agreement (and admitted to facts

supporting that admission as well), and answered yes when the district court asked whether he and his co-conspirator Steven Miotti had control over the Australian nominees. The importance of that admission was clear. The district court did not abuse its discretion when it concluded, based on the totality of the circumstances, that Flynn's guilty plea was knowing and voluntary.

B.

Flynn also argues that his guilty plea should have been withdrawn because it lacks a factual basis supporting either conviction.

"To convict a defendant of a *Klein* conspiracy, the government must show the existence of an agreement to defraud the IRS and an overt act by one of the conspirators in furtherance of the agreement's objectives." *Fletcher*, 322 F.3d at 513. Flynn admitted that he had agreed with Miotti and, through Miotti, several Australian nominees, to avoid taxation by placing his income in the hands of the Australian nominees and maintaining control of accounts in their names. He agreed he had taken all the steps necessary to realize his scheme and that he intended to impair the IRS's ability to calculate his tax liability. Flynn asserts without citation that the amount of money at issue in a *Klein* conspiracy is an essential element of such a charge. It is not, so it does not matter that Flynn did not know or stipulate to the exact amount of money he hid from the government. And although Flynn attempts to muddy the waters by claiming he never controlled the Australian nominees, exercised dominion or control over the funds in their accounts, or conspired with Miotti, any confusion on these issues arose only after Flynn tried to get out of his plea agreement. His stipulations and colloquy are clear and adequate on each of these points.

In the alternative, Flynn argues after the Supreme Court's decision in *Marinello v. United States*, 138 S. Ct. 1101 (2018), *Klein* conspiracies include an additional element not mentioned in his plea. In *Marinello*, the Supreme Court interpreted 26 U.S.C. § 7212(a)'s Omnibus Clause, which "forbids 'corruptly or by force or threats

-6-

of force (including any threatening communication) obstruct[ing] or imped[ing], or endeavor[ing] to obstruct or impede, *the due administration* of [the Internal Revenue Code]." *Marinello*, 138 S. Ct. at 1105 (quoting 26 U.S.C. § 7212(a)) (alterations in original). In construing this clause, the Supreme Court held that "the due administration [of the Internal Revenue Code]" did not include things like the ordinary review of income tax returns but rather implied that there must be a "nexus" between a defendant's obstructive conduct and a "targeted administrative action" like an audit. 138 S. Ct. at 1109–10.

Flynn suggests that the same nexus requirement ought to apply in *Klein* conspiracies, despite the fact that the broad language in § 371 makes no reference to "the due administration [of the Internal Revenue Code]." *See Haas v. Henkel*, 216 U.S. 462, 479 (1910) ("The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government."); *see also Dennis v. United States*, 384 U.S. 855, 861 (1966). As the Second Circuit has explained, the broad scope of *Klein* conspiracies is sanctioned in "long-lived Supreme Court decisions" and arguments aimed at narrowing it "are properly directed to a higher authority." *Coplan*, 703 F.3d at 62.

The factual basis for Flynn's false tax return conviction is similarly robust. A defendant files a false tax return when he "[w]illfully makes and subscribes any return . . . which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter." 26 U.S.C. § 7206(1). Flynn suggests that there is nothing in the record that establishes the $2.7 million used to buy his home was income to him and therefore should have been reported on his taxes. Again, Flynn's admissions in his guilty plea establish exactly what he suggests was not proven. Flynn stipulated that the $2.7 million was income to him and that he only reported a little over $26,000 of income that year.

C.

Finally, Flynn argues that he should have been able to withdraw his guilty plea because the Government breached the agreement at his sentencing by not recommending that he receive a two-level reduction for acceptance of responsibility (which the district court applied anyway).

There was no breach. The Government agreed to recommend an acceptance-of-responsibility reduction if Flynn "commit[ted] no further acts inconsistent with acceptance of responsibility." D. Ct. Dkt. 90 at 5. That did not happen. After signing the plea agreement, Flynn reversed course and disputed almost every fact he previously admitted. He argued to the district court, and reiterates to us on appeal, positions that plainly conflict with the terms of his plea. These acts are not consistent with Flynn's acceptance of responsibility. *See United States v. Rendon*, 752 F.3d 1130, 1133–34 (8th Cir. 2014).

Because Flynn has failed to show fair and just reasons why he should have been allowed to withdraw his plea, we do not need to address his arguments regarding his innocence and the lack of prejudice occasioned by his attempted withdrawal. *See Heid*, 651 F.3d at 853–54. The district court did not abuse its discretion by denying Flynn's motion to withdraw his guilty plea.

III.

Flynn next argues that his *Klein* conspiracy conviction under § 371 is invalid because the offense is void for vagueness. We review whether an offense is unconstitutionally vague *de novo*. *United States v. Cook*, 782 F.3d 983, 987 (8th Cir. 2015).[3] A statute is void if it does not afford fair notice of what is prohibited to a

---

[3] The parties dispute whether this claim was properly presented to the district court and therefore whether we should review *de novo* or only for plain error. *See United States v. Paul*, 885 F.3d 1099, 1105 (8th Cir. 2018). We need not decide the issue because Flynn's argument fails under any standard.

person of ordinary intelligence or if it is so standardless it allows for or even encourages "seriously discriminatory enforcement." *Id.* (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010)).

As we have explained, § 371's "defraud clause" prohibits conspiracies "to defraud the United States," which the Supreme Court has defined as "impairing, obstructing, or defeating the lawful function any department of the Government." *Dennis*, 384 U.S. at 861; *United States v. Derezinski*, 945 F.2d 1006, 1011 (8th Cir. 1991) (same). Flynn argues that alleged disagreements between the circuit courts over the elements and a lack of uniformity as to the required *mens rea* has caused *Klein* conspiracies to become unconstitutionally vague.[4]

We have already discussed the elements issue and, regardless of any disagreement over the necessary mental state, Flynn stipulated to specifically intending to defraud the Government. D. Ct. Dkt. 90 at 3 ("The Defendant agrees that he took the steps described above in order to impair and impede the lawful functioning of the IRS in ascertaining his income tax liability . . . ."). In reviewing vagueness challenges, we ask whether the offense is vague *as applied*, because a defendant "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Cook*, 782 F.3d at 987 (quoting *Holder*, 561 U.S. at 18–19). We have no trouble concluding that a person of ordinary intelligence would understand that Flynn's conduct runs afoul of the statute.

IV.

Flynn next appeals the process the district court used to determine how much restitution he owed and the amount ultimately imposed.

---

[4] Flynn also argues that, if we find *Klein* conspiracies are not vague, we must do so by applying *Marinello*'s nexus requirement. For the reasons already stated, *Marinello* did not alter *Klein* conspiracies.

A.

Flynn argues the district court erred by denying his motions to continue his sentencing or bifurcate the sentencing and restitution proceedings to give his new counsel additional time to prepare to contest restitution. We review for an abuse of discretion, giving the district court wide latitude, and will reverse only if the moving party can show prejudice from the denial. *United States v. Jones*, 643 F.3d 275, 277 (8th Cir. 2011). Flynn changed counsel late, so late in fact, the district court noted that the substitution violated the local rules. Nevertheless, it allowed the substitution and granted a continuance on the condition that no further delays result from the change in counsel. The district court did not abuse its discretion when it refused to grant yet another continuance to allow Flynn's counsel more time to prepare for the restitution hearing.

Next, Flynn argues that he was entitled to a jury trial on restitution. We have previously held that restitution may be found by a judge and that it does not implicate a defendant's Sixth Amendment rights. *United States v. Carruth*, 418 F.3d 900, 904 (8th Cir. 2005). Flynn argues that this precedent was undercut by the Supreme Court in *Southern Union v. United States*, 567 U.S. 343 (2012), but as it happens, we have rejected that argument too. *United States v. Thunderhawk*, 799 F.3d 1203, 1209 (8th Cir. 2015) ("[N]othing in the *Southern Union* opinion lead[s] us to conclude that our controlling precedent in *Carruth* . . . . was implicitly overruled."). Undeterred, Flynn claims in reply that *this* precedent was undermined by the plurality opinion in *United States v. Haymond*, 139 S. Ct. 2369 (2019). Here Flynn finally lands on authority so recent we have not already considered his argument, but he fails to offer any convincing reason *Haymond*, which dealt with "an unusual provision," *id.* at 2383 (Gorsuch, J.) (plurality opinion), governing revocation proceedings for "a discrete set of federal criminal offenses," *id.* at 2386 (Breyer, J, concurring), silently overturns

our precedent governing restitution. *Thunderhawk* remains the law in this circuit and we must follow it until the en banc court or the Supreme Court tells us otherwise.[5]

## B.

Flynn also argues the district court erred in finding that he owed nearly $5.4 million in restitution. The Government has the burden of proving the amount of restitution by a preponderance of the evidence and we review the district court's determination for clear error. *United States v. Ellefsen*, 655 F.3d 769, 782 (8th Cir. 2011).

Flynn's arguments on this score relate to the admission by the Government and its witness that the $15 million figure that Flynn stipulated was unreported income he earned was an approximation. Because restitution is only available for actual and not intended loss, he argues his restitution award, calculated based on the $15 million figure, must be vacated. It is true that courts cannot award restitution for intended loss, *see United Statese v. Chalupnik*, 514 F.3d 748, 754 (8th Cir. 2008), but that is immaterial where the defendant stipulated that he *actually* hid $15 million of income from the IRS.

Flynn also claims that *United States v. Bagley*, 907 F.3d 1096, 1099 (8th Cir. 2018), prohibits using estimates to assess restitution. This overreads *Bagley*, which dealt with the valuation of a four-year-old Terrier named Mister, and merely held that the Government must do more to support its valuation than offer "a speculative estimate of the costs associated with raising Mister." *Id.* In this highly complex tax evasion case, by contrast, where difficulty in assessing the exact amount of actual loss

---

[5] We pause to note that because Flynn admitted to owing between $3.5 million and $9.5 million in restitution, D. Ct. Dkt. 90 at 5, any hypothetical Sixth Amendment right to a jury trial would not be violated in this case because the district court's restitution order did not exceed the "*Apprendi* maximum" of $9.5 million. *See Portalatin v. Graham*, 624 F.3d 69, 82, 88 (2d Cir. 2010) (en banc) (citing *Blakely v. Washington*, 542 U.S. 296, 303–04 (2004)).

is a testament to the scope of Flynn's criminal activity, both parties agreed to the $15 million figure and the Government offered evidence at the restitution hearing that showed the actual amount was likely even higher. It was not clear error for the district court to credit the loss figure that Flynn and the Government agreed upon. Nor was it clear error (as Flynn also claims) for the district court to credit the testimony of the Government's witness and calculate the tax loss from the sale of these shares as an ordinary income event rather than a capital gains event.

Finally, Flynn argues that the district court erred because it awarded restitution on both counts of conviction when restitution is only available on his false tax return offense if it is a condition of his supervised release. *See United States v. Perry*, 714 F.3d 570, 577 (8th Cir. 2013). But the district court did order restitution as a condition of Flynn's supervised release and there was no error. D. Ct. Dkt. 139 at 5.

V.

Last of all, Flynn challenges the district court's application of a four-point enhancement to his sentence for organizing or leading a conspiracy that was "otherwise extensive." U.S.S.G. § 3B1.1. Again, this argument runs headfirst into Flynn's plea agreement where he stipulated that the network of Australian nominees, Flynn, and Miotti qualified as "otherwise extensive" and the enhancement should apply. Whether we view this as a sentencing issue raised for the first time on appeal, an invited error, or an issue Flynn expressly waived, he is not entitled to relief.

The judgment of the district court is affirmed.

_____

-12-