# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1478

_____

United States of America

*Plaintiff - Appellee*

v.

Steven Lee Sisk

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa – Eastern

_____

Submitted: January 11, 2021
Filed: June 3, 2021

_____

Before LOKEN, GRASZ, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

After Steven Sisk pled guilty to bank robbery, 18 U.S.C. § 2113(a), the district court[1] sentenced him to serve a 210-month term. Now, he challenges the district

---

[1]The Honorable C. J. Williams, United States District Judge for the Northern District of Iowa.

court's decision to deny his request to take back his plea.  He also challenges his sentence as substantively unreasonable.  We affirm.

## I.  Background

Sisk pled guilty while under oath.  The government alleged that Sisk took $2,389 from Regions Bank in Waterloo, Iowa.  Before pleading guilty, Sisk—who has Multiple Sclerosis and hip problems—says that he asked his attorney to investigate whether his physical condition rendered him incapable of robbing the bank as alleged in the indictment.

At the plea hearing, Sisk confirmed that he took money from a federally insured bank "by force or violence or by intimidation" when he "display[ed] something that . . . appeared to be a weapon[.]"

Sisk agreed that no one made him plead guilty.  He also noted that he reviewed the plea agreement with his attorney before signing it.  Sisk had "been generally satisfied with the services provided by" his attorney.  And while Sisk "had some difficulty reading," his attorney reviewed the plea agreement with him to ensure that he understood it.

Sisk also said he understood the rights he would lose by pleading guilty.  Of those rights, he specifically agreed that he could not undo the plea itself.

Sisk's attorney did not know "of any defense" not yet considered or discussed with his client.  The attorney: (1) believed that Sisk voluntarily agreed to the plea; (2) knew of no legal reason to reject the plea; and (3) did not know "of anything" that the district court left out that "would affect" the plea's validity.

Before accepting the plea, the district court re-confirmed that Sisk understood what happened during the hearing.  The district court told Sisk that it did not want him "coming back . . . next week or next month" to say "there was something [he]

-2-

didn't understand or that somebody forced or pressured [him] to plead guilty or something like that." In turn, Sisk re-confirmed that he had no questions and voluntarily decided to plead guilty.

Ninety days later, with new counsel, Sisk asked to withdraw his plea. He asserted that his first attorney did not do enough to explore the physically-incapable-of-bank-robbery defense. As Sisk recalled, his first attorney investigated that defense by showing three still photographs to one of Sisk's surgeons. But Sisk believed that his first attorney never asked about Sisk's mobility. Instead, as Sisk recounted, that attorney only asked the surgeon to identify his former patient. Sisk also asserted that last-minute changes to the plea deal left him without enough time and information to grasp what it would mean to plead guilty.

The district court did not allow Sisk to retract his plea. It viewed Sisk's ineffective-assistance theory as untimely, underdeveloped, and inconsistent with his earlier sworn statements.

The district court also relied on the government's evidence—the first attorney's notes—to reject the second attorney's assertions. The first attorney allegedly noted that he showed the surgeon still photographs and a video clip. That evidence did not allow the surgeon to *exclude* Sisk as the robber. But even if the photographs only allowed the surgeon to identify Sisk (without addressing his mobility), the district court said it would still conclude that the first attorney exercised reasonable diligence.

The district court also rejected Sisk's not-enough-time argument because although he only had the final plea agreement "for less than a day, he had a nearly identical draft" for forty-seven days before the hearing. In its view, the plea hearing's safeguards ensured that Sisk understood his plea and its consequences. Finally, it concluded that while Sisk asserted his innocence, he had not presented any evidence to contradict his earlier sworn statements.

After resolving the plea-withdrawal question, the district court sentenced Sisk. The 210-month sentence fell at the bottom of the United States Guidelines Manual range (210 to 260 months, with a 240-month statutory maximum). Sisk asked the district court to vary downward by pointing to his age, health (both mental and physical), life expectancy, and educational status. Given those factors, Sisk believed that an in-Guidelines sentence would "result in him dying in the institution." During his sentencing hearing, Sisk reasserted his innocence and stated that his first attorney effectively forced him to plead guilty. According to Sisk, his first attorney knew that Sisk did not rob the bank because the photos captured a different person. However, he recalled that the attorney effectively said that Sisk could hope to see his granddaughter only if he pled guilty.

In considering the statutory factors under 18 U.S.C. § 3553(a), the district court noted that Sisk had "some very serious medical issues." But, based on its view of the presentence investigation report, the district court declined to find that Sisk "ha[d] mental health issues[.]"

Sisk's allocution did not sway the district court, either. The district court noted that Sisk's new statements contradicted earlier sworn statements and that other evidence "would establish his guilt." The district court reasoned that although Sisk's "physical impairments predate[d] the offense[,]" those impairments "certainly didn't keep him from robbing a bank."

The district court viewed Sisk's criminal history and recidivism as key to its conclusion that Sisk "pose[d] a real and present danger to the community." It also rejected age, education, and upbringing as mitigating factors. While recognizing that "if all other things were equal" it would have considered varying downward based on Sisk's health, for the district court "all things [weren't] equal," especially given Sisk's criminal history and the robbery's timing.

## II. Discussion

Sisk asks us to reverse the district court's plea-withdrawal decision and the sentence it imposed. The record leaves no room for us to grant that relief.

### A. Plea Withdrawal

Sisk may retract a guilty plea "after the court accepts the plea, but before it imposes [a] sentence if . . . [he] can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). His counsel's performance can provide a fair-and-just reason but only if Sisk shows: deficient performance and prejudice. *United States v. Cruz*, 643 F.3d 639, 642 (8th Cir. 2011). To satisfy the first prong, Sisk must show that his first attorney's representation fell below an objectively reasonable standard. *See id.* For the second prong, Sisk must prove that a reasonable probability exists that "but for counsel's errors, [Sisk] would not have pleaded guilty and would have insisted on going to trial." *Id.* (quoting *United States v. McMullen*, 86 F.3d 135, 137 (8th Cir. 1996)).

If Sisk meets that burden, then the district court must still consider other factors. *See United States v. Flynn*, 969 F.3d 873, 877–78 (8th Cir. 2020) (considering assertions of innocence, time between plea and attempted withdrawal, and prejudice to the government). We review plea-withdrawal denials for an abuse of discretion. *Id.* at 878.

Sisk says his first lawyer failed to investigate the physical-impossibility defense. The district court characterized that claim as "factually incorrect." Even if we believe Sisk, however, precedent bars his argument. *See United States v. Trevino*, 829 F.3d 668, 672 (8th Cir. 2016). By failing to object to his first attorney's performance during the plea hearing, Sisk foreclosed using the ineffective-assistance-of-counsel route to plea-withdrawal. *See id.* As a result, Sisk cannot meet the first prong in the fair-and-just-reason analysis. Thus, we cannot say that the district court abused its discretion when it would not let Sisk undo his plea.

## B. Sentencing

Sisk's next challenge focuses on the substantive reasonableness of his sentence. "We review the denial of a motion for downward variance by reviewing the sentence for reasonableness, applying a deferential abuse-of-discretion standard." *United States v. Angeles-Moctezuma*, 927 F.3d 1033, 1037 (8th Cir. 2019). Because we presume that a within-Guidelines sentence is reasonable, Sisk must rebut that presumption and show that he should have received a lower sentence. *See United States v. Goodale*, 738 F.3d 917, 926 (8th Cir. 2013). He has not done so.

Given his health concerns, Sisk views his 210-month sentence as a life sentence because it exceeds his life expectancy. We view that as a significant factor, and the district court did, too. It even said it would have relied on Sisk's health to vary downward "if all other things were equal." But ultimately, it decided that Sisk's criminal history, along with recidivism concerns, outweighed other factors.

Sisk also asserts that the district court failed to consider "most of the mitigating factors" including his age, upbringing, education, mental health, and the plea-withdrawal circumstances. Not so. The district court considered those factors, and others. It did not, however, give them the weight that Sisk wanted. But "simply because the district court weighed relevant factors . . . more heavily than [Sisk] would prefer does not mean the district court abused its discretion." *United States v. Campbell*, 986 F.3d 782, 808 (8th Cir. 2021) (quoting *United States v. Farmer*, 647 F.3d 1175, 1179 (8th Cir. 2011) (cleaned up)).

In addition to considering the parties' arguments, making an individualized assessment under the facts, and applying the § 3553(a) factors, the district court provided a reasoned basis for its sentence. In turn, we cannot say that the district court abused its discretion when it imposed this sentence.

We affirm the district court's judgment.

_____